THE COMMON COUNCIL OF THE CITY OF RICHMOND *v.* THE STATE on the relation of MENDENHALL and Others.

A testator having declared in his will, that it was his intention thereby to dispose of all his property, real and personal, devised as follows: "I will that my brick house shall be finished and rented; and I bequeath the proceeds or rent to my sister," (naming her), "during her lifetime; and after her death, I will that the rents of said brick house shall forever be appro-

priated to the education of —————— children of this town." The house
referred to is on a lot in *Richmond, Indiana.* The lot is one hundred and
thirty-two feet long, by eighty-two and a half feet wide, and the house is
seventy-three and a half feet long, by twenty feet wide, and situate on the
south-west corner of the lot.   Two doors and a cellar are entered from the
interior of the lot, and can not be reached from any street or alley on the
outside.

*Held,* that the devise of the house was within the statute of charitable uses,
43 *Eliz.* c. 4, and not void for uncertainty.

*Held,* also, that the lot upon which the house is situate passed by the devise of
"the house."

*Held,* also, that the blank before the word children was of no importance in
construing the devise.

Where executors appointed in a will to carry out a charitable trust, are dis-
charged from their trust, a Court of equity may appoint other trustees to
take charge of the trust.

Nov. Term,
**1854.**

————

THE COMMON
COUNCIL OF
THE CITY OF
RICHMOND
v.
THE STATE.

APPEAL from the *Wayne* Circuit Court.

*Tuesday,*
*November* 28.

HOVEY, J.—*Ithamar Warner* died in 1835, leaving a
last will and testament, by which, among other things, he
declared that it was his intention to dispose of all his
property, real and personal, and devised as follows: "And
I will that my brick house shall be finished and rented;
and I bequeath the proceeds or rent to my sister, *Sarah
Warner*, during her lifetime; and after her death, I will
that the rents of said brick house shall forever be appro-
priated to the education of —————— children of this town."

The will was regularly proven, and letters testamentary
granted.   The house referred to in the devise, is on lot
twenty-eight in that part of the city of *Richmond, Indiana*,
which was laid off by *Jeremiah Cox.*   The lot is one hun-
dred and thirty-two feet long by eighty-two and a half feet
broad, and the house is situate on the south-west corner of
the same, seventy-three and a half feet long by twenty feet
broad.   Two doors and a cellar are entered from the inte-
rior of the lot, and can not be reached from any street or
alley on the outside.

After the death of *Sarah Warner*, the city of *Richmond*
purchased the house and lot from the heirs of *Ithamar
Warner*, with a full knowledge of the foregoing facts.
The relators, *Mendenhall, Elder* and *Vaile*, are the school
trustees for the city, and have children residing in the

Nov. Term,
1854.

THE COMMON
COUNCIL OF
THE CITY OF
RICHMOND
v.
THE STATE.

same, who are yet to be educated. The city has never appropriated the rents of said house for the education of the children within its limits.

All of the above facts are set forth in the petition, which prays that said house and lot may be applied to the education of the children of *Richmond*, and that trustees may be appointed to manage the trust.

The city, by her attorneys, demurred to the petition; the demurrer was overruled, and upon her refusal to answer over, the petition was taken as confessed, and a judgment entered in conformity with the prayer of the petition, as to the rents of said house and lot, and the appointment of trustees. From that judgment the city appeals.

The only question raised, is as to the construction of the devise of the house.

In the case of *McCord* v. *Ochiltree*, 8 Blackf. 15, this Court decided that the statute of 43 *Elizabeth*, c. 4, commonly called the statute of charitable uses, is in force in this state; and among the uses enumerated in that act are gifts "for maintenance of sick and maimed soldiers and marines, *schools of learning*, *free schools*, and scholars of universities." Courts of equity in *England* and this country have gone great lengths in construing gifts as being within the spirit of this statute, and probably no act has ever been more liberally construed. See 2 Story's Eq. Jurisp. ss. 1164 to 1168 inclusive, and 1 Jarman on Wills 192-3, and the cases there cited.

In sec. 1169, *Story* says: " Another principle equally well established is, that if the bequest be for charity, it matters not how uncertain the persons or objects may be; or whether the persons who are to take are *in esse* or not; or whether the legatee be a corporation capable in law of taking or not; or whether the bequest can be carried into exact execution or not; for in all these and like cases, the Court will sustain the legacy and give it effect, according to its own principles. And where a literal execution becomes inexpedient or impracticable, the Court will execute it as nearly as it can according to the original purpose."

Numerous cases are cited by him as sustaining this sec-
tion, and others might be added, did we not regard the
law as thus laid down, settled beyond all doubt.

We think these authorities fully show that the devise of
the house is clearly within the statute of charitable uses,
and not void for uncertainty.

The executors in the will having been discharged from
their trust, the Court did right in appointing trustees to
take charge of the property devised.

The only remaining question for our consideration, is, as
to the meaning of the word "house," as used in the devise.
Does it include the whole lot, or the ground only upon
which it is erected?

Lord *Coke* says, that "by the grant of a messuage or
house, the orchard, garden and curtilages do pass, without
the word 'appurtenances,' and an acre or more may pass
by the name of house." Coke Litt. 5 b., 56 a. b.—2 Saund.
R. 401, note 2.—Bouv. Dic., title "house." See also *Doe*
v. *Collins*, 2 Term R. 498. The *syllabus* in the case of
*Saltonstall* v. *Brown*, 3 Metcalf's R. 423, quoted in several
elementary works, and referred to by counsel, is inaccurate,
and is not supported by the case. The devise was of "my
*house and lands* in *Salem*," and the meaning of the word
"house" was not defined by the Court.

The *testator* in this case, by the first part of his will,
manifests the intention of disposing of all of his property,
real and personal; and as no disposition of the remainder
of the lot was made, after taking off the portion occupied
by the house, the inference is that he intended that the
whole lot should pass by the word "house." This con-
struction is strengthened by the fact that the house could
not be fully used without passing over the lot, as two doors
and a cellar were accessible only from the interior of the lot.

The blank before the word children in the devise, is of
no importance. If Courts should attempt to give meaning
to blank spaces in written instruments, where the sentence
is complete and the meaning clear, it might become neces-
sary to furnish themselves with measuring instruments to
aid them in the labor of construction.

*Per Curiam.*—The judgment is affirmed with costs.

*J. S. Newman* and *J. P. Siddall*, for the appellants.

*J. Perry*, for the state.