Mitchell *v.* Mitchell.

No. 17,593.

## MITCHELL *v.* MITCHELL.

WILL.—*Devise in Fee Simple to Wife not Limited by Subsequent Precatory Words.*—An absolute devise in fee of certain land to the testator's wife is not limited or charged with any trust by a subsequent provision in the will, that it is the testator's "request and wish" that she will make such provision by will, or otherwise, that at her death a specified son of the testator may share equally in the property willed to her, with the testator's other children.

From the Morgan Circuit Court.

*C. G. Renner* and *Butler, Snow & Butler,* for appellant.

*B. K. Elliott, W. F. Elliott, W. R. Harrison,* for appellee.

HACKNEY, C. J.—The appellant, William C. Mitchell, is a son of Samuel M. Mitchell, by his first wife. The appellee, Ann Mitchell, was the second wife, and is now the widow of said Samuel M. Mitchell, by whom she had six children, having had a son, William H. Eslinger, by a former marriage.

The appellant instituted this suit to enjoin the appellee from making gifts and other disposition, to said Eslinger, of the property devised to her by the said Samuel, and to declare the existence, under the terms of said will, of a trust in such property in his favor.

The circuit court sustained appellee's demurrer to the appellant's complaint, and the correctness of that ruling depends upon the proper construction of said will.

The will first directed the payment of all of the testator's debts. Immediately following this it read: "To

VOL. 143—8

my beloved wife, Ann Mitchell, who, during all of the
long period of our marriage life, has been a true wife
and loving companion, and whose industry, economy
and help have largely conduced to the acquisition of the
estate which I now own and enjoy, I will give to her
the homestead," describing it, "to have and hold the
same in fee simple." Then follow two special bequests
to her of personal property. Continuing, it is provided
that "In addition to the above I will and bequeath to my
said wife, Ann Mitchell, one-third ($\frac{1}{3}$) of all of my real
estate, other than that above mentioned, wheresoever
situated, to have and hold in fee simple, and also one-
third of my personal property and estate of every
description and kind whatever, all of the above last
mentioned bequest of land and personal to be subject,
however, to the conditions herein imposed.

"The remaining two-thirds ($\frac{2}{3}$) of my estate, both real
and personal of every kind and description whatever,
and wheresoever situate, I will, bequeath, and direct
that the same shall be divided and go as follows : To
my son, William C. Mitchell, one-seventh ($\frac{1}{7}$) ; to my
daughter, Catherine Dickson, one-seventh ($\frac{1}{7}$) ; to my
daughter, Mary E. Hyndman, one-seventh ($\frac{1}{7}$) ; to my
daughter, Indiana Veitch, one-seventh ($\frac{1}{7}$) ; to my daugh-
ter, Ann Mitchell, one-seventh ($\frac{1}{7}$) ; to my son, Giles
S. Mitchell, one-seventh ($\frac{1}{7}$), subject to advancements
hereinafter mentioned, and to conditions herein imposed,
each to have the same in fee simple, and as their own
forever." As to five of the above named six children,
directions are next given as to existing and future
advancements, and as to charging such against the
devises and bequests to them. Next follows a devise of
one-seventh of the two-thirds of the estate to Giles S.
Mitchell, charged with certain beneficial interests in
favor of Robert B. Mitchell, another son of the testator.

It is then provided that in the event of the testator surviving his wife, all of the property so devised and bequeathed to her should go in equal proportions to his children. The will then proceeds to nominate executors, and continues: "I will, order, and direct, and impose the same as conditions upon all of the bequests herein made, except the homestead, and the specific property herein given to my wife, that the property and estate bequeathed in this will shall remain undivided, and under the control and management of my executors for a period of three years from the date of my death." At considerable length the executors are directed to continue the testator's business of banking, farming, etc., to sell certain lands in Iowa, Missouri, and Illinois, making partial distributions, and finally dividing the proceeds of the business and sales of property in the proportions in which the property generally is devised. After the above provisions is the following: "It is my request and wish that in the event that my wife survives me, that she will, during her life, make such provisions by will or otherwise, so that at her death my son, William C. Mitchell, may share equally of the estate and property herein willed to her with my other children."

Was it the intention of the testator, in employing the language last quoted, to limit any of the otherwise absolute devises and bequests to his wife, or to charge them with a trust in favor of the appellant?

There is no dissent from the proposition that it is the intention of the testator, to be gathered from the whole will, which must be our guide in answering the most important inquiry in this case: Has the appellant any enforceable interest in the property devised to the appellee? Nor is it doubted that it was within the power of the testator to place such a limitation upon the apparent devise in fee simple, as to charge it with a trust in favor

of another than the immediate devisee. Neither is it questioned that such a limitation might have been made in words not so full of harsh command, when addressed to his wife, as would seem neither rude nor inconsiderate if addressed to an executor or another not sustaining a relationship so near and sacred as that of wife. But we do not understand that language addressed to the wife, in form and substance advisory, will be construed as a command, simply because the relationship not only admits of, but would seem to suggest, words of tenderness and civility, when such construction would radically qualify other and clearly expressed purposes of the testator, and set at naught any of the other well recognized canons of construction. In addition to the admitted rules of construction, above stated, there is one fully settled in this State, that a devise in fee, clearly and distinctly made, cannot be taken away, cut down, or modified by subsequent words not clearly and distinctly manifesting the testator's intention to limit such devise. *Orth* v. *Orth*, 42 N. E. Rep. 277 ; *Ross* v. *Ross*, 135 Ind. 367 ; *O'Boyle* v. *Thomas*, 116 Ind. 243; *Bailey* v. *Sanger*, 108 Ind. 264.

With these several propositions in mind, we must scan the will to ascertain whether the testator intended to create a trust in favor of the appellant, in the property devised and bequeathed to the appellee.

By the language in which the devises and bequests are stated, disregarding for the moment any of the subsequent expressions claimed to constitute conditions and limitations, the appellee is given, in apt form, the highest title known to the law. By the words of the will, she is "to have and hold * * in fee simple." Excepting the two-thirds of the homestead and the two nominal bequests, the fee in one-third would have been her allotment without a will and by the rule of justice

underlying our statute of descents. By the testator's declared recognition of her assistance in "the acquisition of the estate," and the loving companionship she gave him for so many years, we are inclined to the view that he did not desire to provide less than she would have received without his will. If this were all of the will there would be no hesitancy by any one in concluding that clearly and unmistakably she had been given an estate free and unfettered by conditions or limitations and with a full title in fee simple. As we have seen, it is claimed that there are expressed conditions which cut down this exalted title and fasten upon it a trust estate in favor of the appellant, and which becomes effective to vest in him a fee simple interest at her death. To state the appellant's position directly, it is that the expressed fee in the realty and the apparently absolute ownership of the personalty is but a life estate, with the remainder in fee over to the testator's children to vest in them at her death and to be held by her in trust during her life. Our conclusion renders it unnecessary that we should scrutinize this position to learn whether logically the trust asserted would not deny to the appellee the benefits of the property during her lifetime. If the devise of the fee was only to be held in trust for the children, to vest in them upon her death, there being no express devise of a life estate, and no express direction as to the proceeds of the devised and bequeathed property, the inquiry would at once suggest itself, do they not attach to the trust estate? In other words, if the provision of the will had been: "I devise and bequeath all of my property, real and personal, to you to be held in trust for all my children, in equal proportions, and you are directed to execute such deeds or will as that the trust estate shall vest in my said children immediately upon your death," and if the

trustee were a stranger instead of the wife, whose industry and economy had contributed to the acquirement of the estate, it would become doubtful if the trustee could be held to take a life estate in the property. However this may be, appellant would be slow to assert that it is manifest, from the provisions of the will, that the testator did not intend to give to the appellee a beneficial estate in the property. The beneficial estate conceded to her, as a life estate, cannot arise from the devise "in fee simple," nor yet because the time when the *cestuis que trustent* come into the possession is deferred until the death of the trustee. If, indeed, a life estate can properly be said to arise in favor of the appellee, it must be from a manifest intention, after devising the fee, to cut it down and narrow it to a life estate. This, we have said, could be done, but the intention to do so must be made manifest by the same clear and distinct language that created the greater estate, as we have already shown.

The intention to do so, the appellant insists, is first indicated by the words with which the general devise and bequest are closed, namely: "All of the above last mentioned bequest of land and personal, to be subject however, to the conditions herein imposed." And it is argued that one of the conditions thus indicated was in the words: "It is my request and wish that in the event my wife survives me, she will, during her life, make such provisions, by will or otherwise, so that at her death my son, William C. Mitchell, may share equally of the estate and property herein willed to her with my other children." For the appellee, it is urged that these are words of recommendation, and do not constitute one of the conditions referred to by the testator.

If there were no other words of restriction in the will,

these might possibly be construed as intended to be con-nected with the words of devise by the reference to con-ditions imposed.    In that event, however, it would require liberality of construction in favor of the appel-lant to regard the words as constituting a *condition,* since they are not properly words of condition, and could only be held such to give effect to the manifest intention of the testator.    A conditional bequest is one the taking effect or continuing of which depends upon the happen-ing or non-occurrence of a particular event.    A condi-tion precedent is one which must be fulfilled before the estate can vest.    A condition subsequent is one upon the fulfillment or non-fulfillment of which an estate may be divested.    *Hoss* v. *Hoss,* 140 Ind.  551.    These words,  to meet the purposes of the appellant, must perform    the    office,    not   of   forfeiting   the   estate devised nor as rendering a deed or will by the appel-lee necessary to the vesting of any title in her, but of restricting and cutting down a fee simple title to a life estate and of creating a trust in favor of the chil-dren.    This office, as we have seen, cannot be per-formed by raising a doubt, nor could a condition be pre-sumed from ambiguous expressions, but the testator's intention to create a condition must be evident.    Beach Wills, p. 406;  *Warman* v. *Teagarden,* 2 Ohio St. 380.

It will be observed from the statement of the con-tents of the will, that the identical words, omitting the word  "however,"  were  employed  by  the  testator  to attach *conditions* to the provision for his children as were employed to attach *conditions* to the general pro-vision for his wife:   "Subject to the conditions herein imposed."   The suggestion of appellant's counsel that the testator's directions as to continuing his business of banking and farming, and as to selling real and per-sonal property, etc., constituted but one condition, is

repelled by the language which attaches the conditions to the provision made for the children. That the testator did not intend to include the alleged restriction upon the provision for his wife as one of the *conditions* referred to is made apparent by the absurdity of attaching that restriction, as a condition, to the provision made for the children.

In that clause or paragraph of the will in which the testator directs the course of his business, after his death, he designates such directions as the conditions imposed upon the bequests. He said: "I will, order and direct, and impose the same as conditions upon all the bequests herein made, * * * * that the property * * * shall remain undivided and under the control and management of my executors," etc. As already shown; that the property should remain undivided; that the executors should control it; that the business should continue; that property should be sold and the proceeds thereof substituted for it, and that the devisees and legatees should be postponed in their estates for three years, were the expressed conditions upon which the property was made to vest. We take it as clear, therefore, that the alleged restriction upon the provision for the appellee was not one of the express and reserved conditions upon which her title was made to depend.

The only remaining question is as to the effect of that clause in which the testator said: "It is my request and wish that * * she will * * make such provisions, by will or otherwise, * * that my son, William C. Mitchell, may share equally of the estate * * willed to her, with my other children."

The conflict of opinion as to the effect of words of this character is almost bewildering. Confusion has arisen from the idea that "the wish of a testator, like

the request of a sovereign, is equivalent to a command,"
regardless of other rules of construction and of other
expressions of the testator in positive conflict with the
notion of a command.   In the recent case of *Orth* v.
*Orth*, *supra*, we cited many cases where expressions of
hope, confidence, entreaty, wish and request were held
not to create a trust.   In addition to the authorities
there cited, we quote from Beach on Wills, p. 404, the
doctrine of precatory trusts as we understand and
approve it.   "Precatory trusts have not been invariably
regarded with favor in England, and in recent cases a
disposition has been evinced to qualify the rule or apply
it with caution; also among the American States, the
courts of South Carolina, New Jersey, New York, and Con-
necticut, appear disposed to construe the doctrine with
strictness; while in Pennsylvania the English rule has
been declared to form no part of the common law of that
State, precatory words being construed by its courts to
amount to a declaration of a trust, only when it appears
from other parts of the will that the testator intended
not to commit the ultimate disposal of the estate to the
kindness, justice, or discretion of the devisee or legatee.
And in other States the judges show a decided leaning
against the doctrine.   Although the modern tendency
is very decidedly toward a restriction of this doctrine,
when cases arise in which both the subject and the
object of the trust are clearly defined in the precatory
words or clauses, the court will consider it evidence of
an intention to create a trust."   Many authorities are
there cited in support of the text.

   In 27 Am. and Eng. Ency. of Law, p. 5, the doctrine
of precatory trusts is stated with clearness and precision
and the conclusions stated are supported by many cited
cases and authors.   It is there said:   "Mere precatory
words may be sufficient to create a trust, when used by

the testator in such connection that an intention to create a trust can be clearly inferred from the entire will. It was said by Lord Lonsdale, in a leading case, that, 'As a general rule, it has been laid down that when property is given absolutely to any person, and the same person is, by the giver, who has power to command, recommended, entreated, or wished, to dispose of that property in favor of another, the recommendation, or entreaty, or wish, shall be held to create a trust: First, if the words are so used that, upon the whole, they ought to be construed as imperative; secondly, if the subject of the recommendation or wish be certain; and thirdly, if the objects or persons intended to have the benefit of the recommendation or wish, be also certain.' As will be seen from the cases cited below, the earlier English and American cases carried the doctrine very far, and, as said by Vice-Chancellor Hart, 'The first case that construed words of recommendation into a command, made a will for the testator.' The tendency in recent years, both in England and the United States, has been to restrict the operation of the doctrine of precatory trusts, and the present rule is well stated in the following words: 'In order that a trust may arise from the use of precatory words, the court must be satisfied from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an expressed trust was as full, complete, settled and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner.' As will be seen, however from the authorities cited below, each case must be determined according to its own peculiar features and circumstances. It is difficult, therefore, to formulate any general rule upon the subject. The intention of the testator is the main thing; but how is that to be

determined. In the first place, the entire will should be considered in determining the intention, and the precatory words should not only be of such a character as to indicate that the testator intended a trust to be created, but they must also be consistent with the other provisions of the will—that is, they must not be repugnant to positive provisions by which the same property is devised or bequeathed absolutely or without limitation. Secondly, the words should be given their natural and ordinary meaning, unless there is something to show that they were intended to be taken in a different sense," etc. We have no privilege to either make a will for the testator or to deny his right to give property absolutely and in fee simple to his wife and to suggest to her how he would prefer that she should dispose of it without creating an imperative command that she should so dispose of it. The natural and ordinary method of effectuating that intention for which the appellant contends would have been the short and unmistakable form of giving to the wife a life estate with the fee over to his children. Instead of doing so, he gave to her without restriction and subsequently, by words whose natural and ordinary meaning suggest a desire, not to affect the devise to her, but as to how she may dispose of her property. These words do not indicate "that the testator's intention to create an expressed trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner." We cannot believe "that, upon the whole, they ought to be construed as imperative." They are, when construed as restricting the absolute title, in positive antagonism to that title, while, if construed according to their natural and ordinary import, as implying a recommendation, they do no violence to

the clearly and emphatically expressed intention to ·impart an absolute title.

The case of *Haskett* v. *Alexander*, 134 Ind. 543, in the conclusion reached, is not out of harmony with our conclusion in this case.    There, the testatrix, by devise, without expressly declaring the character of title, gave to her daughter certain described real estate : *"Provided,* That when" sold, "she may pay to Georgia Alexander * * * one thousand dollars."    The words of the proviso were in, and a part of, the devising clause, connected immediately with, and qualifying, the devise, and constituting a condition upon which the devise was made. What was said, by the learned judge who wrote that opinion, with reference to precatory trusts, was upon the conclusion that the testatrix had clearly manifested an intention to charge the devise with the sum named, and not with a purpose to lay down the rule for construing precatory words.    We do not regard the words of the proviso as in the nature of mere recommendation, or of a precatory character, but as creating a charge upon the devise.

We conclude that the lower court committed no error in sustaining the appellee's demurrer to the complaint. ·

The judgment is affirmed.

JORDAN, J., took no part in the decision of this case.

Filed December 17, 1895.