[No. 18816.   Department Two.   January 9, 1925.]

GLADSTONE MOUNTAIN MINING COMPANY, *Respondent,* v.
S. H. TWEEDELL *et al., Appellants.*[1]

DEEDS (47)—CONDITIONS—CONSTRUCTION AND OPERATION OF CONDITIONS SUBSEQUENT.   Conditions in a contract for mining deeds making time of the essence of the agreement that, in case of default the agreement shall be null and void and shall be forfeited and sums paid retained as liquidated damages, are conditions subsequent and enforcible.

SAME (47-1)—CONDITIONS AGAINST ALIENATION.   A condition in an agreement for mining deeds that none of the claims shall be sold or mortgaged without the written consent of all the parties is an unlawful restraint upon the power of alienation, and null and void.

Appeal from a judgment of the superior court for Stevens county, Neal, J., entered February 13, 1924, upon findings in favor of the plaintiff, in an action to quiet title, tried to the court.   Affirmed.

*Fred M. Williams,* for appellants.
*Allen, Winston & Allen,* for respondent.

HOLCOMB, J.—This is an action to quiet title to mining claims specified in a certain contract, on the ground that the language of the contract, hereinafter italicized to designate the portions involved in this controversy, constitute a cloud upon respondent's title to the mining claims; and on the ground that any rights of the defendants in the suit, including appellant, based thereon, are unfounded in law and right, and are void, as unjustly and unlawfully interfering with the rights of respondent to own, operate, control and manage the claims involved.   The claims were acquired by respondent under conditions and deeds of conveyance

[1]Reported in 232 Pac. 306.

expressly calling attention to the terms of the italicized portions of the contract aforementioned.

It is also sought to perpetually restrain the assertion of any right, title or interest arising by virtue of the contract conditions in controversy.

Prior to June 13, 1916, certain locators of the mining claims in Stevens county, Washington, entered into the contract in question, which is here set out:

"Memorandum of agreement made and entered into this thirteenth day of June, A. D. 1916, by and between Carl Johnson, John Johnson, Joe Johnson of Cummins, Washington, and Harve Phipps, of Spokane, Washington, parties of the first part, and Walter J. Nicholls and Jesse M. Hall, of Spokane, Washington, parties of the second part,

"Witnesseth: The said parties of the first part, for and in consideration of the sum of One Dollar to them in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, do hereby agree that for ninety days from date hereof the parties of the second part shall have the privilege of going upon the Setting Sun, Iron Duke, Lucky Strike, Owls, Silver Fraction and the Lucky Silver Bell, Lone Star, Free Silver Fraction, and Lucky Boy Lode Mining claims, situated in the Northport Mining District, County of Stevens, State of Washington, and doing such surveying, prospecting and development work as they may wish at their own expense.

"If at the expiration of sixty days from date hereof, the parties of the second part shall notify the parties of the first part in writing that within thirty days from date thereafter they will form a corporation under the mining laws of the State of Washington, with a capital stock of One Million Five Hundred Thousand shares of the par value of ten cents per share, fully paid and non-assessable, the parties of the first part will make, execute and deliver to the corporation so formed, when the incorporation thereof is complete, and not later than ninety days after this date, good and sufficient mining deeds for the above-mentioned mining claims,

receiving therefor all of the capital stock of said corporation.

"That thereafter and within ninety days after this date, upon payment, by parties of the second part, or their assigns, of the sum of Ten Thousand Dollars ($10,000) to the treasurer of said company, as a donation to said company to be used under the direction of the trustees thereof for the purpose of defraying the cost of incorporation of said company and development of the claims aforesaid, said parties of the first part will transfer to said parties of the second part Six Hundred and Sixty-six Thousand shares of said capital stock, and will transfer Five Hundred Thousand shares of the capital stock of said company to the treasurer thereof, to be held by said company or sold for development purposes at the discretion of the trustees.

"This agreement is made in the further consideration that parties of the second part shall pay to parties of the first part the sum of Three Thousand Dollars, of which sum Carl Johnson, John Johnson and Joe Johnson shall receive the sum of Fifteen Hundred Dollars, and Harve Phipps shall receive the sum of Fifteen Hundred Dollars; within 90 days from this date.

"It is further agreed by first parties, that upon completion of the organization of the corporation herein referred to, that any moneys expended by second parties within ninety days from date hereof in surveying or prospecting claims aforesaid, shall be deducted from amount to be placed in treasury as above provided, and returned to second parties. In the event of second parties failing to complete the organization of said corporation within the time specified, any moneys so expended shall be at the sole expense of second parties and shall inure to the benefit of first parties.

"It is further agreed by the parties hereto that the stock of said corporation remaining in the hands of first parties after the above provisions shall have been complied with shall be divided as follows: One Hundred and Fifty Thousand shares shall be owned and held by Carl Johnson, John Johnson and Joe Johnson, and One Hundred and Eighty-four Thousand shares shall be owned and held by Harve Phipps, and to be

property of said parties to be held or disposed of as they may deem advisable.

"*It is further agreed by all the parties hereto, that none of the claims above-mentioned shall be sold or mortgaged by said Company without the written consent of all of the parties hereto.* It is also further agreed that should the above-mentioned corporation fail to do the necessary assessment work, that the parties of the first part shall have the privilege of doing such assessment work, and in that event said company shall convey such claims to said first parties by good and sufficient mining deeds and shall relinquish all title and interest in and to said claims.

"*It is further agreed that said corporation shall keep said claims free and clear of encumbrances and liens.*

"*Time being the essence of this agreement, the parties of the second part agree that if at any time they shall be in default for a period of ten days, this agreement shall be null and of no effect, and any moneys therefor paid or expended by said parties of the second part, shall be forfeited and shall be and remain the property of the parties of the first part, as liquidated damages, and the parties of the second part shall take nothing under and by virtue of this agreement.*"

The contract was filed in the office of the auditor of Stevens county prior to the deeds to the claims to the company. The terms of the contract requiring the formation of the respondent corporation, and in other particulars, were carried out.

While respondent's action is to secure a decree declaring certain portions of the contract, as hereinbefore set out and italicized, null and void, it was conceded by respondent that the last italicized paragraph of the contract is to remain operative only in the event of the failure on the part of the respondent to do the necessary assessment work on the mining claims as provided therein.

Upon the organization of the corporation provided by the contract, Nicholls and Hall made a proposal to

the corporation that, upon the issuance of the company's stock and the taking over of the mining claims, the company was to take the same subject to the terms and conditions of the memorandum of agreement made and entered into June 13, 1916, by and between Johnson, et al., on the one part, and Nicholls and Hall on the other part. To this proposal, the contract was attached and all thereof spread upon the records of the corporation, together with the proposal. At the first meeting of the stockholders of the corporation, this same proposal was presented with express reference to the italicized clauses in the contract, the proposition considered by the stockholders, and unanimously adopted. Thereupon deeds to the mining claims were duly executed to the company, which deeds also made the transfer of the mining claims subject to the express provisions of the contract of June 13, 1916. Thereafter, at the first meeting of the trustees of respondent, the secretary read to them the minutes of the first meeting of the stockholders, with special reference to the taking over of the claims by the corporation, expressly making the transfer to it subject to the provisions of the contract hereinbefore mentioned, and the proposition was adopted by the trustees of the corporation with such restrictive provisions clearly and definitely pointed out. Appellant was actively associated in the location of the claims with the principals mentioned in the contract. He received fifty thousand shares of the capital stock of respondent upon its original distribution, and is still the owner and holder of a large amount of its stock. He afterwards acquired the rights of the three Johnsons and Phipps in and to the contract and its protective clauses above referred to.

After the trial on the merits, no defendant except appellant having joined issue upon the complaint of respondent, the following finding of fact, which is the

only finding excepted to by appellant, was made by the court:

"That the said defendants and each of them claim to have some right, title and interest in and to said mining claims and each of them by virtue of the following provisions of the contract hereinbefore referred to, to wit:

" 'It is further agreed by all of the parties hereto that none of the claims above mentioned shall be sold or mortgaged by said company without the written consent of all of the parties hereto.'

" 'It is further agreed that said corporation shall keep said claims free and clear of encumbrances and liens.'

"Which said claims constitute a cloud upon plaintiff's title to said mining claims, but that the said claims of defendants and the whole thereof are unfounded in law and right and are void, but unless removed by a decree of this court wrongfully and unjustly interfere with the rights of this plaintiff to own, operate, control and manage said claims."

The court concluded, as a matter of law, that respondent was entitled to a decree quieting its title against the defendants in the action.

The only question before us is whether or not the italicized paragraphs of the contract hereinbefore quoted constitute conditions subsequent, and enforcible conditions subject to which respondent took title.

Appellant asserts that the italicized portions are all conditions subsequent, and that it is well settled in this jurisdiction that, whenever the terms of a contract are plain and unambiguous, valid in their provisions, and enforcible by the courts, they will be enforced as made; citing *Mills v. Seattle & Montana R. Co.*, 10 Wash. 520, 39 Pac. 246; 12 C. J. 410, to the effect that a condition subsequent is one which operates upon an estate already created and vested, and renders it liable to be defeated or forfeited; also *Mitchell v. Mitchell,*

143 Ind. 113, 42 N. E. 465; *Ball v. Milliken,* 31 R. I. 36, 76 Atl. 789, Ann. Cas. 1912B 30, 37 L. R. A. (N. S.) 623; *Koch v. Streuter,* 232 Ill. 594, 83 N. E. 1072.

Respondent—and the trial court agreed with it—asserts that the conditions specified are conditions against alienation, opposed to the rule against perpetuities, and are void as against public policy.

We concede to appellant that the last italicized paragraph falls within the definitions of the authorities cited by him of conditions subsequent. The conditions in that paragraph would operate upon, and render liable to be forfeited, an already vested and existing estate.

The other conditions are different. They are not like cases, cited from this court and others, with conditions imposed such as restricting the cost of a building, and other building restrictions, or reservations, as in *Hughes v. South Bay School District No. 11,* 32 Wash. 678, 73 Pac. 778.

We agree with the trial court that the provisions of the contract declared null and void are invalid under the rule against conditions inhibiting or restricting alienation, at common law.

The right of alienation is an inherent and inseparable quality of an estate in fee simple. *Potter v. Couch,* 141 U. S. 296. While we leave the question open for future consideration as to partial or limited restraint on alienation, as it is not involved here, the general rule is stated in 8 R. C. L. 1114, as follows:

"It may be stated, therefore, as a cardinal rule, that an attempted total restraint on alienation is repugnant to a grant of the fee and hence totally inoperative . . . And among the older text writers and adjudged cases, authority can be found to the effect that the rule does not prevent all conditions and restraints upon the power of alienation, and in a number of cases such restraints as were limited in time, and reasonable

in application, were upheld; but these holdings have been said to be based on a misconception of certain early English cases, and, on principle and authority, the better rule is that a direct restriction for any time, however short, is void."

In *Potter v. Couch, supra,* the United States supreme court held that it was difficult to perceive on principle why a partial restraint is not just as incompatible with the idea of complete ownership as a general restraint.

Warvelle on Vendors, states the rule as follows:

"Since the enactment of the statute *quia emptores,* therefore, no conditions or restrictions in a conveyance of the fee which prohibits the alienation of land have been allowed to have any effect, and, being repugnant to the estate granted, are considered void upon that ground alone. This principle is well established in the jurisprudence of every American state, and has on several occasions been re-affirmed by the supreme court of the United States." Warvelle on Vendors (2d ed.), § 451, p. 531.

We find that the above statement of Warvelle is not strictly correct, for in Kentucky a different rule prevails, which has become *stare decisis,* and the court there will not depart therefrom. See *Kentland Coal & Coke Co. v. Keen,* 168 Ky. 836, 183 S. W. 247, L. R. A. 1916D 924.

See, also, *Latimer v. Waddell,* 119 N. C. 370, 26 S. E. 122, 3 L. R. A. (N. S.) 668; with a case note thereto by the editors in 3 L. R. A. (N. S.) 668.

Jones, Real Property and Conveyances (2d ed.), vol. 1, § 662, says:

"After an absolute conveyance in fee simple, a clause providing that the grantee shall not mortgage or dispose of the property is repugnant and void; or that he shall not offer to mortgage, or suffer a fine or recovery. So is a clause prohibiting the grantee from conveying without the consent of the grantor."

In fact, as the court of appeals of Kentucky observed in the *Kentland Coal & Coke Co.* case, *supra*:

"It must be conceded that the great weight of authority outside of Kentucky is to the effect that, where the fee simple title to real estate passes under a deed or will, any restraint attempted to be imposed by the instrument upon its alienation by the grantee or devisee is to be treated as void, and such is clearly the rule announced by Mr. Gray in his excellent work on 'Restraints on Alienation'."

See Gray, Restraints on Alienation (2d ed.), particularly §§ 4, 10, 19, 105, and 279.

There can be no doubt that the decree is right, and it is affirmed.

MAIN, C. J., MACKINTOSH, and MITCHELL, JJ., concur.