LEWIS ET AL. *v.* ATKINS ET AL.

[No. 18,265. Filed April 21, 1952. Rehearing denied
June 20, 1952. Transfer denied October 6, 1952.]

*Henry M. Dowling* and *Addison M. Dowling,* both of Indianapolis, for appellants.

*Taylor, Kurrie & Quinn; Bredell, Cooper & Martin;* and *Kivett & Kivett,* all of Indianapolis, for appellees.

CRUMPACKER, J.—This appeal is concerned wholly with the legal construction of Item I of the second codicil to the will of the late Sallie E. Coleman, deceased, which the court below concluded vests no legal rights in the appellants and so adjudged. The item in controversy reads as follows:

"I give, devise and bequeath to the Mutual Service Foundation of Indianapolis, a charitable Association for the benefit of needy women in Marion County and in which I have long been interested, my home and residence located at 1006 N. Meridian Street in Indianapolis, Marion County, Indiana, together with all curtains, drapes and window

shades, the large mirror in the entrance hall and the large mirror in the dining room; the billiard table, chairs, and large desk in the billiard room; the books in the library; the large red sofa in the back parlor and the stove and icebox in the kitchen provided, however, that said Mutual Service Foundation must accept or reject this said devise and bequest within a period of six months from the date of my death. In the event that said devise and bequest is rejected by said Mutual Service Foundation, or is not accepted by it within the period of six months following my death, said real and personal property shall revert to my estate and become a part of the residue thereof. In the event that said devise and bequest is accepted by Mutual Service Foundation, the property shall be known as the 'Sallie E. Coleman Memorial Home' and shall be used solely for the charitable purposes of the Mutual Service Foundation and shall not be sold or conveyed by said Mutual Service Foundation. In the event that the Mutual Service Foundation shall cease to exist or shall cease to use said premises as a charitable organization or shall no longer desire to so use said real and personal property, the same shall revert to my heirs at law.

"Also it is my wish that Henry Lewis and his wife, Gertrude Lewis, be permitted to live in their quarters over the garage on said premises, as long as they desire so to do, rent free; also that the aged colored couple, Mr. and Mrs. Archie Lewis be permitted to live in the quarters at the rear of my home as long as they may wish to do so, rent free."

As of some assistance to the court in determining the questions presented, the parties stipulated that the following extrinsic facts might be considered. For approximately 41 years prior to the death of William H. Coleman, husband of executrix, the appellant, Henry Lewis, had been employed by the decedent as chauffeur, yard and house man. After the death of William H. Coleman, he was employed by the testatrix in the same capacity for nine months and up to the time of her

death. During said employment Henry Lewis was paid a weekly salary comparable to the value of his services and he and his wife, Gertrude Lewis, were permitted to occupy the living quarters on the second floor of the garage in the rear of the Coleman residence, rent free. By the will of William H. Coleman the Lewises were given $5,000 cash and real estate generally known as 3513-15 Graceland Avenue, Indianapolis, Indiana, upon which a double house is located. By the Sallie E. Coleman will Henry Lewis was given $10,000 in cash and other personal property and his wife Gertrude received the sum of $1,000 in cash. The devise to the Mutual Service Foundation, provided for by Item I of the second codicil above quoted, was refused by said devisee and the property in controversy passed under the residuary clause of the will to the executors, to be handled as therein directed until the estate was closed and then to trustees in trust for specific purposes and persons. By order of the court the executors and trustees sold the property to the appellee Bapps Corporation which refuses to accept title because of the appellants' claim here asserted. The district in which the Coleman residence is located is now devoted to business almost exclusively.

It has been suggested that the devise to the Mutual Service Foundation of "my home and residence located at 1006 N. Meridian Street, Indianapolis, Marion County, Indiana," did not include the real estate upon which the garage is located. We do not believe, however, that such a construction of the will is tenable. According to the great weight of authority the devise of a "home" includes not only the testator's dwelling house but the entire parcel of real estate constituting the residence estate. *City of Richmond* v. *The State* (1854), 5 Ind. 334. See also Note, 12 A. L. R.

1179. Therefore we conclude that, by Item I of the second codicil of her will, Sallie E. Coleman made a general devise of the entire lot, upon which her home and the garage in controversy stand, to the Mutual Service Foundation and, in the event it rejected the gift, then to the beneficiaries named in the residuary clause of her will. To that general devise the testatrix added words of a precatory character concerning the appellants' use of "their quarters over the garage on said premises," and we are called upon to determine whether such precatory language was intended to be mandatory or whether it was the purpose of the testatrix to give the taker of the fee full discretion in the matter of effectuating her "wish."

The effect of the use of the precatory words in wills is the subject of numerous decisions by the courts of nearly all the states of the union and out of them there seems to have emerged considerable confusion but no general principle or rule applicable in all instances further than the proposition, from which there can be little dissent, that such words must be given the effect the testator intended them to have. In determining the question of the testator's intention, the generally accepted rules of construction must apply and it will be presumed that he used precatory words in their ordinary and usual sense unless there is something to show that he intended that they be given a different meaning. *Mitchell* v. *Mitchell* (1895), 143 Ind. 113, 42 N. E. 465.

Conceding this the appellants nevertheless insist that the controversial provision of Sallie E. Coleman's will, when examined in connection with other parts of the will and codicils and in the light of the relationship of the parties to each other and the moral obligation to care for the appellants which the

testatrix naturally recognized, conclusively evidences her intention to vest a life estate in the "quarters over the garage" in the appellants. With this we cannot agree. An examination of the extrinsic evidence, all of which appears by way of stipulation, indicates nothing more than had the testatrix vested such life estate in the appellant in apt and specific terms, the devise would have been a natural and understandable one in view of the appellants' just deserts but we find nothing in said evidence that compels us to conclude that she intended to do so. As for the will itself, the language she employed contains none of the words or terms usually used in creating life estates. The words "life" or "life estate" do not appear and certainly permission to occupy the premises "rent free" is not compatible with the rights of a life tenant who owes rent to no one and whose occupancy is not permissive. The natural and ordinary method of effectuating the intent for which the appellants contend would have been the short and unmistakable procedure of giving the appellants a life estate with the fee over to the Foundation. Instead of doing so she made a general devise of the whole property to the Foundation to which she coupled words that, in their ordinary meaning, expressed a wish that the Foundation permit the appellants to occupy a part of the premises so devised as long as they desire with rent forgiven. It is our opinion that if the appellants have any rights in the disputed property such rights must spring from the doctrine of precatory trusts or not at all.

In Vol. 1, Bogert on Trusts and Trustees, 1951 Ed., §48, p. 342, we find this text:

"The word 'request,' 'desire,' and the like, do not naturally import a legal obligation. But the early view in England was that such words, when used in a will, were to be given an unnatural meaning,

and were to be held to be courteous and softened means of creating duties enforceable by the courts. According to that opinion words of request prima facie created a trust. But since the beginning of the nineteenth century the English courts have changed their stand upon this question, and now hold that the natural significance of precatory words is not a trust, but that such an obligation may be shown by other portions of the instrument or by extrinsic circumstances. The American courts have adopted this natural construction of precatory expressions."

Viewing the present case in the light of this statement of the law we must conclude that the owners of the fee to the garage property hold the same without trust obligations to the appellants unless such obligations are shown by other portions of the will or by extrinsic circumstances.

Where the maker of a will repeatedly uses concise, legal and technical terms to express his intention to vest, in persons named, an estate or interest in property, a change from such phraseology to precatory expressions in connection with the disposition of other property indicates rather clearly that he did not intend such precatory words to create enforcible obligations as otherwise he would not have abandoned language with which he was familiar and which was unmistakably suited for the purpose. As bearing on this rule of construction see 2 Page on Wills, §933, p. 880; *The State Bank* v. *Ewing* (1861), 17 Ind. 68; 1 Bogert, Trusts and Trustees, §352. Page, in his work on wills above cited, says "if different words are employed with reference to a given subject matter, it will be assumed that testator intended a different meaning when he employed such different expressions." So in this case, in disposing of the fee to the garage property the testatrix used the words "I give, devise

and bequeath." In connection with the same subject matter she said, "Also it is my wish that Henry Lewis, etc." Therefore we must assume that she did not intend the word "wish" to mean "give, devise and bequeath."

Bogert, in his work on trusts, *supra*, says:

"That the testator clearly created a trust in another part of the instrument, using appropriate words of trust, has been held to show that precatory words were not intended to create a trust. And so, also, that the testator was a lawyer, and hence would presumably understand how to create a trust clearly, tends to prove that a use of precatory words was not intended to give rise to a trust."

An examination of the present will and its codicil indicates that it was prepared by a skilled lawyer and in Items IX, X and XI thereof the testatrix clearly and precisely created trusts for the purpose therein expressed. Therefore it seems likely that had she intended to burden the garage property with a trust for the appellants' benefit she would not have done so by the use of precatory words. On the other hand where she sought to vest discretion in those to whom she directed her words she did so clearly and unmistakably. For example in Item VI she made specific bequests to the members of her household staff, including the appellants, and in doing so she used the legal term "give and bequeath." She then authorized her executors "to keep such of the above help in my home as they deem necessary, . . . and pay them such salary as may be suitable to their respective duties," in which event they were to be permitted to "live there rent free." Clearly this provision of the will authorizes the executors to dispense with the services of

the appellants if and when they saw fit and repossess the quarters they live in and is entirely repugnant to the codicil under consideration if construed as sought by the appellants. In fifteen instances, concerning more than one hundred beneficiaries, the testatrix vested interests in property, real and personal, through use of legal words and phrases such as "devise," "bequeath," "devise and bequeath" and "give, devise and bequeath" and in no instance, where she clearly intended to create enforcible interests, did she use precatory words. The whole will indicates that the testatrix and her draftsman knew how to create trusts and vest estates in property in clear and accurate terms and did so where such was their intention. It is clear that they knew the effect of precatory words and how to employ them when it was intended to vest discretionary powers in those to whom such words were directed. We cannot believe that the controversial words here involved ought to or can be construed as mandatory. For a discussion of the law of precatory trusts as it pertains in Indiana see *Mitchell* v. *Mitchell, supra; Lumpkin* v. *Rodgers* (1900), 155 Ind. 285, 58 N. E. 72; *Snodgrass* v. *Brandenburg* (1905), 164 Ind. 59, 71 N. E. 137, 72 N. E. 1030.

Granting that the extrinsic evidence shows that the appellants spent many years of faithful service in gainful employment as household servants of the testatrix and her late husband, William H. Coleman, both of whom held them in great affection and high esteem, we can not ignore the fact that they are the beneficiaries of Coleman gifts to the extent of $16,000 in cash, a duplex residence at 3513-15 Graceland Avenue in the city of Indianapolis and other personal property. Consequently we find no great moral equation in the problem of determining the testatrix' intention

which prompts the conclusion that she meant to make precatory words mandatory. Nor does the situation warrant us in relaxing the ordinary and generally accepted rules for the construction of wills of doubtful meaning if, indeed, we had authority to do so.

Another feature of the case, it seems to us, requires comment. When the Coleman house was built it stood in a desirable residential district in the city of Indianapolis. As the city grew business began to encroach upon the neighborhood and when Sallie E. Coleman made her will her residential property had become surrounded by commercial interests and had little value for anything else. As long as the property was used by Mutual Service Foundation as a home for needy women, the occupancy of the quarters over the garage by the appellants would interfere little, if any, with the primary purpose to which the testatrix hoped it would be devoted. It is reasonable to assume that she knew that if the gift was rejected by the Foundation and the property thereby reverted to the beneficiaries of her residuary estate it would have little value for anything but business and, burdened with a life estate or a trust for the benefit of the appellants, its value for that purpose would be largely destroyed. The appellants were not the sole objects of the testatrix' bounty and we cannot believe that she was determined to provide for them to the point of impairing the value of property devised to others whom she also considered worthy of her largesse.

Judgment affirmed.

ACHOR, J., concurs with opinion.

ROYSE, J., dissents with opinion.

## CONCURRING OPINION

ACHOR, J.—The majority opinion as written in this case contains the following statement: "According to the great weight of authority the devise of a 'home' includes not only the testator's dwelling house but the entire parcel of real estate constituting the residence estate. *City of Richmond* v. *The State* (1854), 5 Ind. 334, (347). See also Note, 12 A. L. R. 1179." It is true that the above cited case quotes language from an early English case which is adequately comprehensive to support such a conclusion. However, the quotation used in the above case was merely cited to support the actual conclusion of the court that *there being no evidence to the contrary* "*the inference is that he* (the testator) *intended that the whole lot should pass by the word 'house.'*" This, I believe, correctly states the rule of law in Indiana.

Also, the majority opinion fails to cite a significant circumstance which, in my opinion, indicates that the testator intended that the portion of the garage occupied by the appellants should pass with the entire tract described by decedent as her "home." It occurs to me that the meaning given the word "home," as used in another part of the will, is most indicative of the intention of the testatrix. Elsewhere in her will testatrix, in connection with a discussion regarding the future use and occupancy of the property as it related to appellants, made the following statement: "I authorize my executors to keep such of the above help in *my home* as they deem necessary, permitting them to live there rent free, and pay them such salary as may be suitable to their respective duties." According to the stipulation of facts appellants had resided in the apartment over the garage for a period of over 41 years. It occurs to me that by the above statement

regarding appellants living in her "home" that she considered the garage apartment as part of her "home," and that she intended the devise of her "home and residence located at 1006 N. Meridian Street, Indianapolis, Marion County, Indiana," to include her house and all the appurtenances thereto; that the entire property was intended to be devised as a unit, with the "wish" that in event the property continued to exist as a unit and as a home for needy women of Marion County, that appellants "be permitted to live in their quarters over the garage, on said premises . . . rent free," *but not otherwise.*

## DISSENTING OPINION

Royse, J.—While I agree generally with the principles of law stated in the majority opinion, I cannot agree with their conclusion in this case.

I agree with the following statements in the majority opinion: that the devise of the home and residence included the quarters over the garage which is the subject of this litigation; that the questioned provision does not give appellants a life estate, and that a consideration of the whole will clearly indicates testatrix clearly understood the effect of precatory words and how to employ them when she intended to vest discretionary powers in her executors or trustees. She did exactly this in several items of her will. The last sentence in Item Six of her will is a striking example of how she used such expressions with reference to these appellants and others not parties to this action. It is as follows:

> "I authorize my executors to keep such of the above help in my home as they deem necessary, permitting them to live there rent free, and pay them such salary as may be suitable to their respective duties."

Thus, in unequivocal terms, she authorized her executors to, *at their discretion,* permit appellants to work and live in *"her home"* and to pay them appropriate salaries for their services. Here she used entirely different phraseology than in the provision before us in this case.

I agree in particular with the following statement in the majority opinion:

> "The effect of the use of the precatory words in wills is the subject of numerous decisions by the courts of nearly all the states of the union and out of them there seems to have emerged considerable confusion but no general principle or rule applicable in all instances further than the proposition, from which there can be little dissent, *that such words must be given the effect the testator intended them to have.* In determining the question of the testator's intention, the generally accepted rules of construction must apply and it will be presumed that he used precatory words in their ordinary and usual sense unless there is something to show that he intended that they be given a different meaning. *Mitchell* v. *Mitchell* (1895); 143 Ind. 113, 42 N. E. 465." (My emphasis)

In that case the facts stated by the court are as follows:

> "The appellant, William C. Mitchell, is a son of Samuel M. Mitchell, by his first wife. The appellee, Ann Mitchell, was the second wife, and is now the widow of said Samuel M. Mitchell, by whom she had six children, having had a son, William H. Eslinger, by a former marriage.
>
> "The appellant instituted this suit to enjoin the appellee from making gifts and other disposition, to said Eslinger, of the property devised to her by the said Samuel, and to declare the existence, under the terms of said will, of a trust in such property in his favor.
>
> "The circuit court sustained appellee's demurrer to the appellant's complaint, and the correctness of that ruling depends upon the proper construction of said will."

The pertinent portions of the will are stated as follows:

> " 'To my beloved wife, Ann Mitchell, who during all of the long period of our marriage life, has been a true wife and loving companion, and whose industry, economy and help have. largely conduced to the acquisition of the estate which I now own and enjoy, I will give to her the homestead,' describing it, 'to have and hold the same in fee simple.' Then follow two special bequests to her of personal property. Continuing, it is provided that 'In addition to the above I will and bequeath to my said wife, Ann Mitchell, one-third (⅓) of all of my real estate, other than that above mentioned, wheresoever situated, to have and hold in fee simple, and also one-third of my personal property and estate of every description and kind whatever, all of the above last mentioned bequest of land and personal to be subject, however, to the conditions herein imposed.' "

The will then provided, in other clauses, that two-thirds of his property was to be divided equally between his seven children and that in the event his wife died before he did that the property willed to her would go to his children. The will, after naming executors, etc., contained the following clause:

> " 'It is my request and wish that in the event that my wife survives me, that she will, during her life, make such provisions by will or otherwise, so that at her death my son, William C. Mitchell, may share equally of the estate and property herein willed to her with my other children.' "

In considering the provisions of the will to determine the testator's intent, the court said:

> "By the language in which the devises and bequests are stated, disregarding for the moment any of the subsequent expressions claimed to constitute conditions and limitations, the appellee is given, in apt form, the highest title known to the law. By

the words of the will, she is 'to have and hold .. . in fee simple.' Excepting the two-thirds of the homestead and the two nominal bequests, the fee in one-third would have been her allotment without a will and by the rule of justice underlying our statute of descents. By the testator's declared recognition of her assistance in 'the acquisition of the estate,' and the loving companionship she gave him for so many years, we are inclined to the view that he did not desire to provide less than she would have received without his will."

It is to be noted the questioned provision was an entirely separate clause from the one devising the fee title to the widow.

In the case of *Fenstermaker* v. *Holman* (1902), 158 Ind. 71, 62 N. E. 699, the provision of the will before the court was as follows:

"I further direct and will that my beloved wife, Sarah Ann Reeves, shall have all my real and personal property that I may be possessed of at the time of my death (she selling so much of my personal property as she may think necessary to be applied on the payments of my debts); the real estate, being described as follows, to wit: . . .; and I further direct that the said Martha M. Fenstermaker be paid the sum of $200 out of that part of my estate which I herein will and devise to my beloved daughter Cyrena Ann Holman. This said sum bequeathed to her in order to make them share my estate share and share alike. I further will and devise to my beloved daughter Cyrena Ann Holman the following described real estate, to wit: . . ."

The question was whether the widow took a fee or a life estate. The court then said:

"It will be observed that the interest to be taken by the widow, Sarah Ann Reeves, in said real estate, is not defined in the will. It may be that the devise to the widow, standing alone, without considering the subsequent provisions of the will,

would be construed to give her a fee in said real estate; but wills are not to be so construed. Such construction would be the result of presumption or inference as to the intention of the testator, because he has not said in express terms that he devised said real estate to his widow 'in fee simple,' either in apt words or by the use of legal words of inheritance. The whole will must be considered to ascertain the intention of the testator. In clear and distinct terms the testator provided that at the death of his wife the real estate devised to her shall go to his daughters; describing the part given to each daughter. Said testator also directed 'that said Martha M. Fenstermaker be paid the sum of $200 out of that part of my estate which I herein will and devise to my beloved daughter Cyrena Ann Holman. This said sum bequeathed to her in order to make them share my estate share and share alike.' Considering the whole will, it is evident that the testator did not intend to give his widow more than a life estate in said land."

In that case, as in this case, the questioned provision was contained in one clause and related to the same property.

In 54 Am. Jur. 65, §56, it is stated:

"The crucial test under the modern rule as to the creation of a trust by precatory words is whether the wish, desire, or recommendation expressed by the trustor is meant to govern the conduct of the one to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of such person, leaving it, however, to the person to exercise his own discretion."

It appears to me the majority have completely ignored the general rules which they announce should be our guide in cases of this kind.

The questioned provision is as follows:

"*Also* it is my wish that Henry Lewis and his wife, Gertrude Lewis, be permitted to live in their

quarters over the garage on said premises, as long as they desire so to do, rent free;" (My emphasis)

The foregoing is the concluding paragraph of Item 1 of the second codicil of the will. It relates solely to the disposition of the testator's home. It seems to me the majority opinion completely ignores the ordinary and usual meaning of the word "also" in the above provision. This word is defined in Webster's New International Dictionary as follows:

"2. In the same manner (as something else) ; likewise.

"3. In addition; as well; besides; too.

"Syn.—More, moreover, further, yet, similarly. ALSO, TOO, LIKEWISE are used in adding one proposition or consideration to another. ALSO adds to a statement something that may be affirmed equally with what precedes;"

Under this item of the will she provided for the disposition of the fee title to this property. She then added a provision that can be affirmed equally with that disposition. It is unquestioned she had the right to do this. There is absolutely nothing in this provision from which it might even be inferred that the privileges she so clearly granted appellants would be subject to the discretion, whim or caprice of either her executors, trustees or the Mutual Service Foundation. The only persons who were granted any discretion in this matter were the appellants. I believe that under the generally accepted rules of construction applicable to cases of this kind the testatrix unequivocally gave appellants the right and privilege to occupy those premises as their personal home and residence so long as they desired so to do. For these reasons I believe the judgment should be reversed.

NOTE.—Reported in 105 N. E. 2d 183.