**ELSE E. CALLWOOD, Plaintiff**

v.

**OSMOND KEAN, Defendant**

Civil No. 179-1949

District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

July 11, 1950

*Same case on appeal, see p. 526, this volume*

142

MOORE, *Judge*

This is an action in replevin and for accounting, wherein the plaintiff alleges she is the owner of certain real and personal property, and that the defendant refused to deliver the same to her and to give her an accounting of his doings as her former agent. In his answer the defendant, who held a joint power of attorney of plaintiff and plaintiff's son, intervenor herein, dated February 20, 1942, denies plaintiff's allegations of ownership in the property sought to be replevied. The joint power of attorney was executed at a time when, apparently, both the plaintiff and the intervenor believed they were joint owners of the real estate referred to in this action, as the power of attorney alludes to the real estate as "our real and leasehold estate."

At a hearing on November 23, 1949, at the conclusion of plaintiff's case, the defendant moved to dismiss on the ground that by reason of the provisions of the joint will

of the plaintiff and her deceased husband, she was not entitled to the relief prayed for. After hearing argument on the motion, the Court took the matter under advisement, as the questions involved hinged upon the interpretation of the said joint will. The Court thereupon directed the parties to file briefs and return briefs on the following questions:

1. Can there be a trust estate where the beneficiaries hold the title under instructions not to alienate without the consent of a person named?

2. Where the legal title is held by one person and the equitable title by a second person, and the first person transfers the legal title, does that defeat the equitable title?

3. Where trustees are named and the testator provides that the trustees may name their successors in trust, and they fail so to do, does the trust die or is it incumbent upon the court to name their successors in trust?

4. In the Virgin Islands where a fee is granted and alienation of that fee is made subject to obtaining the consent of a person named, is that a condition within the meaning of a condition repugnant which will be void (or is that a condition against alienation)?

5. Under this will, does the son Clifford W. L. Callwood, have any vested interest which would enable him to make a valid objection to alienating of the corpus on the part of the plaintiff, or is his interest merely an inchoate one which vests upon the death of his mother?

At a subsequent hearing on December 2, 1949, of a petition of the plaintiff for an allowance of one thousand dollars in order to pay her living expenses, the Court found the necessity therefor and ordered the defendant to pay over the said amount to the said plaintiff from the joint trust account of plaintiff and her son, Clifford Callwood, which was maintained by the defendant.

On May 22, 1950, Clifford W. Callwood, plaintiff's son, moved the Court to intervene, which motion was granted, there being no objection thereto.

Thereafter, on the eighth day of June 1950 the matter came on for hearing and argument upon the briefs which were filed. At this hearing sufficient evidence was produced showing that all the legatees mentioned in the will had died, except Iza Callwood, and her claim against the estate had been satisfied by the plaintiff.

As the defendant Osmond Kean does not claim ownership in any of the property, both real and personal, coming into his hands as attorney in fact for both plaintiff and intervenor, and as the intervenor concedes that plaintiff is entitled to the use and benefit of the joint estate of the plaintiff and her late husband for her lifetime or until she remarries, the only question for decision are:

(1) Whether under the joint will plaintiff owns the property outright, (2) Whether she is entitled to possession only, with right of alienation, with or without the consent of anyone, or (3) Whether she has only a life estate in the same, with remainder to her children or children's heirs.

The pertinent parts of the will for interpretation are as follows:

"No. 1

"I Richard Edgar Clifford Callwood, reserve the right accruing to me as husband in accordance with Royal Ordinance of 21st of May 1845 Chapter 18, Section 1, say to retain, if I am the survivor our whole joint estate undivided with our joint children as long as I do not marry again.

"No. 2

"I Richard Edgar Clifford Callwood, do hereby give and grant to my said wife, Mrs. Elsa E. Callwood, if she is the survivor the same right as mentioned sub. No. 1 of retaining our joint estate undivided with our joint-children as long as she does not marry again.

146

"As however both of us consider it to be the benefit and welfare of all concerned, that the said right of retaining our joint-estate undivided should be given me, Mrs. Elsa E. Callwood, under certain restrictions I, Richard Edgar Clifford Callwood and I, Mrs. Elsa E. Callwood, do hereby decide, that the said right is given with the following restrictions:

"It shall be obligatory for me, Mrs. Elsa E. Callwood immediately at the death of my husband to deposit all cash-money, Bonds, Shares, and Securities belonging to the joint-estate and only to draw the interest of same. In case of unforseen events, which will make it necessary to withdraw the money or to make a change of the securities, this can only be done with the consent of Mr. Jacob Peiffer, living at Bieberick of Rhein, or in case of his death with the consent of Mr. Otto Zwanziger of Bieberick of Rhein or the person to whom the surviving of these gentlemen may transfer the said authority. It shall furthermore be obligatory for me, Mrs. Elsa E. Callwood, to pay every month the revenues which I receive to Mr. Richard Edgar Clifford Callwood's Mother, Mrs. Caroline A. Callwood, as long as she lives, the amount of Thirty Dollars and to Mrs. Josephine W. Branson of New York as long as she lives the sum of Fifteen Dollars . . . Finally, if Mrs. Elsa E. Callwood retaining of our joint-estate should cease only 1/3 say one third part of our whole joint estate shall accrue to me, Mrs. Elsa E. Callwood, while the balance 2/3, say two third parts, shall accrue to our joint-children share and share alike, as their paternal inheritance.

## "No. 3

"The properties situated in the Town of Charlotte Amalie, St. Thomas, D.W.I., and which are recorded in Mrs. Peiffer's name, but of which the greater part belongs to us, viz:
"[The properties are then listed]
"concerning these properties it is decided, that if Mrs. Elsa E. Callwood be the survivor Mr. Richard Edgar Clifford Callwood's sister, Mrs. Anna R. Peiffer shall after the death of Mr. Richard Edgar Clifford Callwood have the full use and benefit of these including the right to rent them out, with the condition, that she pays all taxes and fulfill all duties incumbent upon the owner against the public, that she keeps the properties in proper repair and insured against fire in a reliable fire insurance company, the policies to be deposited as the cash money etc. mentioned in para-

graph No. 2 and further that she pays a monthly amount of Dollars 15 unto Miss Iza Callwood at present at school in New-chatel, Switzerland, as long as both of them are alive. Finally it is a condition that Mrs. Peiffer as soon as possible after my death has the properties recorded in the name of Mrs. Elsa E. Callwood or if she is not taking possession of our joint-estate, as belonging to this, and that she has recorded as a servitude that they may only be sold or mortgaged with the consent of the gentlemen, keeping the power mentioned in Paragraph No. 2. If any of these conditions are not fulfilled for any of the properties, the expenses for the recording to be paid by the joint-estate, she is no more to have the use and benefit of that on these properties, and the gentlemen keeping the above mentioned power is to decide these questions, but if the monthly amounts for Miss Iza Callwood are not paid in due time she may claim an annuity of Dollars 180 a year from a reliable life-insurance company. If these properties should be sold or mortgaged or the fire insurance policies become due the cash proceeds are to be administered as the cash money etc. mentioned in paragraph No. 2 and the payments to Miss Iza Callwood to be continued for her life time from our joint-estate.

"No. 4

"In case a division of our joint-estate should become necessary, the Legacies are to be paid by Mrs. Elsa E. Callwood and our joint-children proportionately to be the shares each of them should take; but if any of them should not wish to submit him-self to this he shall be free to pay once for all the legaties [sic] 25 times the yearly amount, which else he should have paid, or to pay for them annuities in a reliable life-insurance company to the same amount as else he should have paid.

"The cash money paid in this way to Miss Iza Callwood or the policy bought for her to be administered as the cash money, etc., mentioned in Paragraph No. 2. Bank or Banks for deposit-ing money, Bonds, Shares, Securities, and Policies are to be de-termined on the gentlemen keeping the Power mentioned in Para-graph No. 2."

Directing our attention to the restrictions in the will, it is clear that the first restriction left to Mrs. Call-wood only a life interest in the cash money, bonds, shares

148

and securities. Besides, she had to pay from the same the sum of forty-five dollars monthly to the legatees during their lifetime.

■ As to the modification of this restriction, providing a manner in which use may be made of the corpus, since the survivor of these gentlemen did not transmit the authority, the question is: did this modification die? If it did, then Mrs. Callwood would be left without anyone with the "power" to determine whether unforeseen events arose, thereby leaving her to get along as she can with the income only under any circumstances; for it must be borne in mind that she was obliged, under the first restriction, to deposit all cash money, etc., and *only to draw the interest in the same.* (Italics supplied)

Inasmuch as the survivor, Mrs. Callwood, accepted or agreed to the restriction of drawing only the interest on the cash monies and securities in consideration of her retaining the joint estate undivided with the joint children, instead of having it divided as provided by the will, the restriction stands whether the persons with the power named are alive or not, for she herself considered and agreed that that restriction, along with the others, was for "the benefit and welfare of all concerned."

To the Court it would seem that the testator had the welfare of both his wife and children in mind, as was cited in paragraph 1 of section 2 of the will. He did not want her to dissipate the corpus, therefore, he gave her only the right to the interest. However, as eventualities might have arisen and the need for more than the interest required for her well-being, he made provision for her to obtain such additional funds as may have been necessary by obtaining consent of someone whom he named and who were to transfer the said authority. Their having failed to do so should not operate to leave her in pecuniary circumstances, if unforeseen events arose,

which would make that which she is specifically given, to wit, "only to draw the interest," inadequate.

If we examine closely what was the duty of the persons named, we will find that it was to make a finding of fact, and once that fact was established, they were to act upon it. It being a mere finding, it was reviewable by the Court.

■ "In general, a simple discretion to pay over to an income beneficiary such portions of the principal as may be judged by the trustee to be necessary for a given purpose, such as the support of the beneficiary, is not so personal to the named trustee that it cannot be exercised by a substitute or successor trustee. It contemplates a mere finding of fact, and the exercise of it is subject to judicial review for abuse. Russell v. Hartley (1910) 83 Conn 654, 78 A 320.

"In Greenwich Trust Co. v. Converse (1923) 100 Conn 15, 122 A 916, this Russell Case is said to put emphasis on the primary intent of the testator to provide for the support of the beneficiary out of principal in case the income should prove insufficient for that purpose, and greater emphasis on the power of a court of equity to revise and review a discretionary power which is not intended to be exercised or not at the caprice of the appointee, but is intended to be exercised upon the happening of a contingency foreseen and provided for by the testator." 2 A.L.R.2d 1451.

■ In the said Greenwich Trust Co. case, "the main question reserved for advice of the Supreme Court was whether the discretion granted to the named trustee survived in a substitute trustee. The court held that it did . . ." The opinion reads in part: "While it has been generally agreed that when the power is a matter of personal confidence in the trustee, it will not survive unless the testator so direct, no single test for determining whether or not the power is a matter of personal confidence has

150

been universally accepted or adhered to." After reviewing certain cases: "It appears from these cases that if the power is coupled with a testamentary disposition for the benefit of the cestui que trust, and is to be exercised or not if and when a stated condition of fact appears to exist, then the original trustee may be compelled to exercise the power; that is to say, he may be compelled to inquire into the existence of the condition and in good faith to determine whether in his judgment it does or does not exist. Within the limits of due inquiry and debatable decision the discretionary judgment of the trustee is final; otherwise it may be reviewed and revised by a court of equity. In such a case the power is said to be annexed to the trust and survives to a successor trustee. This statement of the rule of law does not exhaust the subject, for the question whether the power survives is fundamentally a question of testamentary intent, and hence a question in each case of the proper construction of the will." The court held that in this case the power was annexed to the office and survived to the successor trustee, and in the same measure as pertained to it in the original trustee. 2 A.L.R.2d 1452, annotation 1383.

By the above it is apparent that Mrs. Callwood could have applied to a court of equity if she believed the persons with the power were exercising the same capriciously, the same as the children of the testator, with whom she held the property jointly, according to the will, could have applied to the said court for an injunction if they felt the said power was being abused to their detriment. Contrary to the opinion of counsel for plaintiff, as indicated in his brief, the persons with the power could have refused to give their consent at any time, if in their opinion an unforeseen event did not exist.

 With reference to the real properties, although they were recorded primarily in Mrs. Peiffer's name. Mrs.

151

Peiffer was aware she did not own all of them outright. Having accepted a life estate in all as provided in the will, she was legally bound to have them recorded as provided in the will, either in Mrs. Callwood's name at the death of Mr. Callwood, if she was taking possession of the joint estate, or in the name of the joint estate if she were not. In other words, if Mrs. Callwood were not taking possession of the joint estate undivided with the children and wanted a division, as provided for in the will, Mrs. Peiffer could not have recorded the properties in the name of Mrs. Callwood, for that would have been perpetrating a fraud upon the children. The portion of the will which shows this is as follows:

"Finally, it is a condition that Mrs. Peiffer, as soon as possible after my death, has the property recorded in the name of Mrs. Else E. Callwood or if she is not taking possession of our joint estate, as belonging to this."

The condition hereunder (under) which Mrs. Peiffer was to have a life estate in the properties was to record them in Mrs. Callwood's name as soon as possible after Mr. Callwood's death, and the condition under which they were to be recorded in Mrs. Callwood's name was that she, Mrs. Callwood, was to take possession of the joint estate. Their both having thus complied with the will shows that Mrs. Callwood is holding the property of the estate pursuant thereto, as a trustee, and the time of recordation of the said properties in Mrs. Callwood's name has no bearing as counsel for plaintiff argues, she herself knowing she did not own the property absolute, as was exemplified in the power of attorney which she and her son Clifford Callwood gave to their agent the defendant, Osmond Kean, heretofore referred to.

As to the servitude against selling or mortgaging the property without the consent of the persons with the power, it is evident that that was to be recorded against

152

the properties only if Mrs. Callwood were "taking possession of our joint estate." If she were not, then the properties would have been recorded as "belonging to this," meaning, belonging to the joint estate, without the servitude, as then there would have been a division of the joint estate, the plaintiff receiving one-third of the remainder of the real property after Mrs. Peiffer's death, and the children two-thirds. Under such a state of facts the remaindermen, the wife and children, if they had taken care of the legatees as provided in the will, could have disposed of their interest.

██ ██ Indicative of the fact that a life estate was intended for the wife in the joint estate, is the fact that even if the real property were sold or mortgaged for any reason by the consent of the persons with the power, "the cash proceeds are to be administered as the cash money, etc., mentioned in paragraph 2."

The one strong point in the brief for the attorney of the plaintiff, is the one that the condition imposed in the deed against disposing of the properties without the consent of the persons named, is a restraint against alienation, for "Generally, provisions cannot be sustained which forbid alienation, except with the consent of designated persons." 41 Am. Jur. 117, section 77; Gladstone Mountain Mining Co. v. Tweedell, et al., 232 Pac. 306.

However, the reason for the rule is for the protection of third persons, and if it is even conceded that the restriction is void and the plaintiff has the right of disposition without the consent of the persons named or their successor, the proceeds of the same, as provided by the joint will which she executed and to which reference is made in the deed, are to be deposited and administered as the cash money. And thus, the parties named or their successor are to pass upon the fact whether an unforeseen event has arisen which would give them the right

or power to consent to her use of any part of that money. All this goes to prove that it was the intention of the testator that she should hold the joint estate undivided with her children as a trustee, without calling her thus.

If Mrs. Callwood disposed of or mortgaged the property without depositing the proceeds of the same, the children with whom she agreed to hold, would be defrauded, and they could seek redress in a court of equity.

Interpreting the will as a whole, it is obvious that the testator had certain things in mind, to which both the survivor, Mrs. Callwood, by her being a co-testatrix, and her subsequent retention of the joint property, and Mrs. Peiffer, by her acceptance of the life estate and her carrying out what she was required to do under the will, agreed.

The things the testator had in mind were:

1. To provide adequately for his wife, although not allowing her to dissipate the estate to the detriment of his children.

2. To provide for his children, although not to the detriment of his wife; and

3. To provide for his sister, his mother, Mrs. Josephine Branson and Miss Iza Callwood.

These he felt could not be carried out solely by his wife, therefore, he appointed persons with power to effectuate them. The persons having failed to carry out the testator's wishes by transferring the power given them, the Court, in order to carry out the testator's wishes, finds it its duty to appoint a successor.

It is therefore the opinion of the Court:

(1) That the defendant Osmond Kean has no interest in the property held by him, and should deliver any and all property he may have, and submit an accounting, to Mrs. Callwood, who still holds the whole joint estate, with her joint children;

(2) That intervenor, Clifford Callwood, has no

154

possessory interest in the estate which his mother, plaintiff herein, now holds as trustee for herself and heirs, he being one of them. In the event his mother, the plaintiff, Else E. Callwood, should marry, the estate is to be divided as provided by the joint will;

(3) That the Court should appoint someone in its discretion to take the place of the persons named in the will to whom the plaintiff may go in case of unforeseen events as provided in the will; and

(4) That the proceeds of the sale of the property No. 38 Dronningens Gade, Queen's Quarter, together with the mortgage or mortgages which were taken thereon, should also be deposited in such bank as the said person named by the Court may determine.

The questions of the right of the Court to appoint a successor to the parties named by decedent and of plaintiff's interest in the joint estate being determinative of this case, the other questions raised by the Court at the hearing of the motion and upon which briefs were written, need not be discussed.

Order may be drawn in conformity with this opinion.