McADAMS, surviving spouse, etc., Plaintiff, v. BOLSINGER, Admr., etc., et, Defendants.

Probate Court, Hamilton County.

No. 14576. Decided June 27, 1950.

532

Richard H. Pennington, Cincinnati, for H. C. Bolsinger, administrator.
Walter K. Sibbald, Cincinnati, for Harry Elmer Cherrington and Earl John Cherrington.
H. C. Bolsinger, Cincinnati, for The Norwood Federal Savings and Loan Association.

## OPINION

By DAVIES, J.

This matter came before the court on the petition of Myles McAdams, the surviving spouse of Elizabeth McAdams, deceased, to elect to purchase the mansion house at the appraised inventory value of $8000.00 as fixed by the appraisers. Said real estate was not specifically devised by the decedent. The petition was filed within one month after the approval of the inventory, proper service has been made upon all necessary parties, and there are no creditors of said decedent whose rights will be prejudiced by the conveyance of the mansion house to the surviving spouse.

This real estate is encumbered with a mortgage of record in the amount of $3852.75 payable to The Norwood Federal Savings and Loan Association.

By the terms of decedent's will, her estate was to be equally divided between her surviving spouse and her two sons by a previous marriage, Earl John Cherrington and Harry Elmer Cherrington.

The mortgagee has not presented to the executor within four months of the appointment of such fiduciary its claim for the balance due on the mortgage.

Questions have arisen as to whether it is necessary that the mortgagee file its claim under the provisions of §10509-112 GC, before payment can be made to it for the balance due on its mortgage, and whether or not the surviving spouse in purchasing the mansion house at the appraised value must pay the inventory value of $8000.00 in addition to the mortgaged value of $3852.75, or, if the surviving spouse is entitled to purchase the mansion house for $8000.00 and either deduct from the purchase price the amount of the mortgage or pay the full purchase price of $8000.00 and require the fiduciary to pay the amount of the unpaid mortgage.

Sec. 10509-112 GC, provides that all claimants shall present their claims to the executor or administrator in writing, including claims arising out of contract, out of tort, on cognovit notes or on judgments whether due or not due, secured or unsecured, liquidated or unliquidated, and requires that all claims shall be presented within four months after the date of the appointment of the executor or administrator.

Since an executor or administrator of a deceased person's estate usually cannot know of the existence of claims against an estate, or, if he does know of their existence, he cannot be presumed to know of

their amount or justness, the law wisely provides that claimants "shall present their claims to the executor or administrator in writing," and, so that estates may be expeditiously administered, the law further requires that "all claims shall be presented within four months after the date of the appointment" of the fiduciary.

As pointed out in the notes under section 3 on page 941 of Addams & Hosford's Ohio Probate Practice, Volume 1, the law does not require the doing of an idle thing, and hence, as a general rule, no claim is required to be presented unless it is such a claim that the administrator or executor can legally refuse to pay it. If the character of a claim is such that no action of the administrator or executor can defeat the validity of the claim, then it would be useless to present it, so far as affecting the legality of the claim itself is concerned.

Thus, under the provisions of §10509-121 GC, the allowance made to the widow and children for their support for twelve months, debts entitled to a preference under the laws of the United States and personal property taxes and obligations for which the decedent was personally liable to the state of Ohio or any subdivision thereof need not be presented as a condition precedent to their payment by the fiduciary. For other exceptions see §11261, 11402, 11408, 11410, 11411 and 10509-216 GC.

It also has been held that, when the executor, at the time of his appointment, is already in possession of a note for collection, it is not necessary that the owner of such note present his claim thereunder to such executor. Gerhold v. Papathanasion, 130 Oh St 342, 4 O. O. 425.

It also has been held that, where a judgment is a subsisting lien on the lands of the debtor at the time of his death, it is not necessary to present such claim for allowance to the personal representative. Ambrose v. Byrne, 61 Oh St 146.

There is no provision, however, either in the law or decided cases in Ohio, which relieves a mortgagee from the requirement to present its claim to the executor or administrator in writing within four months after the date of the appointment of the executor or administrator setting forth the nature and amount of its claim, before payment of the mortgaged balance can be made out of the assets (other than the chattel or real estate covered by the mortgage or the proceeds derived from the sale of such mortgaged property) held by the fiduciary.

It is immaterial whether or not the mortgagee in the instant case presented its claim in writing to the administrator, as will be hereinafter discussed.

We come now to the following question: When a spouse dies possessed of a mansion house which is encumbered with a mortgage given to secure a note of the deceased spouse, and the surviving spouse elects to purchase said mansion house at the appraised value as fixed by the appraisers, is such surviving spouse required to pay the balance due on said mortgage in addition to the value fixed by the appraisers?

Under the provisions of §10509-41 GC, every executor or administrator shall make and return on oath into court, among other things, a true inventory of the real estate of the deceased located in Ohio, based on values as of the date of death of the decedent.

Sec. 10509-42 GC, provides that the real estate and personal prop-

erty comprised in the inventory, unless an appraisement thereof has been dispensed with by order of the court, shall be appraised by three suitable disinterested persons, appointed by the court.

Sec. 10509-56 GC, stipulates that the inventory shall be signed by the appraisers who shall certify that the inventory is a true and correct appraisement of the property exhibited to them.

By the provisions of §10509-61 GC, the appraisement of the real estate shall be conclusive for all purposes except inheritance tax when the inventory has been approved by the court unless a reappraisal is ordered.

Sec. 10509-89 GC, provides that at any time within one month after the approval of the inventory, the surviving spouse shall have the right to purchase the mansion house "at the appraised value as fixed by the appraisers" if a petition is filed as set forth in said section.

In the case under consideration, the "appraised value" of the mansion house, as fixed by the appraisers, was $8000.00.

For inheritance tax purposes, under the provisions of §5341 GC, it is the duty of the county auditor to fix the actual market value of any property the succession to which is subject to the levy of an inheritance tax. To appraise means to value property at what it is worth, and appraising property at "actual market value" means "appraisement" at actual value. **Tax Comm. of Ohio v. Clark, Exrx, 20 Ohio 166.** For appraisement purposes, the terms "true and correct appraisement," "true inventory," "appraised value," "actual market value" and "actual value" are synonymous.

"Market value" is the price which property will bring in a fair market after fair and reasonable efforts to find a buyer who would give the highest price for it, and is the price which can be obtained in open market on fair competition. **Reigle v. State, 45 Oh Ap 251; 186 N. E., 875.**

"Actual value" means the market value of a particular item of personal property or parcel of real estate free of, and without consideration to existing, encumbrances.

When Myles McAdams elected to purchase at the appraised value of $8000.00 the mansion house itemized in the inventory of his deceased spouse's estate, he was entitled, upon payment of the sum of $8000.00, and upon compliance with the provisions of §10509-89 GC, to a conveyance of such property free from the mortgaged encumbrance.

We feel that it is unnecessary to enter into an extended discussion concerning the exact nature as to the estates and rights of a mortgagor and mortgagee since legalistic views of those rights differ materially in the various states and even within the confines of the same state. Generally speaking, for the purposes of this case, a mortgage is a conveyance of an estate or pledge of property, as security for the payment of money or performance of some other act, conditioned to become void upon such payment or performance. **27 O. Jur. 253.**

A mortgagor, in Ohio, is commonly said to retain legal title as to all the world, at least while he remains in possession, until foreclosure, or until the title is passed to a purchaser at a foreclosure sale. **27 O. Jur. 369.**

The mortgagor has seisin in law. **Culver et v. Harper et, 27 Oh St 464.**

536

Upon the death of the mortgagor owning mortgaged property, his interest passes to his heirs or devisees, subject to the lien of the mortgage. **Gill v. Pinney, 12 Oh St 38; Straman v. Rechtine, 58 Oh St 443.**

The executor or administrator is required to pay off the mortgaged debts of the decedent whom he represents, according to their priorities. Hall v. Musler, 1 Disney, 36; 12 O. Dec. Rep., 471.

Upon the death of a mortgagor having at the time of his death a right to redeem mortgaged property, that right is to be exercised by his heirs or devisees. **Kelley v. Stanbery, 13 Ohio 408; Stover v. Bounds, 1 Oh St 107.**

One having an interest in or lien on property, who pays off for his protection a prior encumbrance upon it, is entitled in equity to be subrogated to all the rights of the prior encumbrancer, and to enforce the security for his reimbursement out of the encumbered estate. **Amick v. Woodworth et, 58 Oh St 86.** A surviving spouse who elects to purchase at its appraised value a mansion house encumbered by a mortgage and pays off the balance of said mortgage, is subrogated to the rights of the deceased mortgagor who would be entitled to the proceeds of the mortgaged property.

The purchaser, at a foreclosure sale of mortgaged premises, acquires the interest and title of both the mortgagor and mortgagee and stands in the shoes of both or all persons in privity with them. **Frische v. Kramer, 16 Ohio 125; §11694 GC; Taylor v. Fowler, 18 Ohio 567.**

It is the duty of the court, under the provisions of §10509-89 GC, in "fixing the terms and conditions of payment to the executor or administrator for such property," to approve a sale in which Myles McAdams, as surviving spouse, will pay the balance due on the mortgage of the loan association, or will assume (with the consent of the mortgagee) payment of the balance due on the mortgage, and will pay to the deceased spouse's fiduciary the difference between the appraised value of $8000.00 and the balance due on the mortgage on the mansion house, or, in the alternative, it is the duty of the court to approve a sale in which the surviving spouse will pay the fiduciary the appraised value of $8000.00 and require said representative to pay mortgagee the balance due on the mortgage, in which latter instance the surviving spouse will be entitled to a conveyance free of the mortgaged encumbrance. In said latter instance, the mortgagee will be entitled, without written presentation, under the provisions of §10509-112 GC, of his claim, to receive from the fiduciary the amount due on its mortgage.