Bell, J.
The sole question for determination here is whether the so-called blockage rule should have been applied in this case in determining the value of the Towmotor stock for succession tax purposes.
It was stipulated before the Probate Court that the mean *445 between the bid and asked price of the stock on the date of death was $19.75 per share.
The testimony of two expert witnesses was offered in the Probate Court, one on behalf of the estate and the other on behalf of the Tax Commissioner. The witness for the estate testified that, in his opinion, the entire block of 8,100 shares could have been sold within a 30-day period without depressing the market only if they were sold by way of a secondary offering, i. e., by discounting them to a brokerage firm which would later have offered them for resale in smaller blocks. He stated that, in his opinion, the discount which would have been required by a brokerage firm would have been $1.75 a share.
By stipulation, the testimony of the expert for the Tax Commissioner was that the 8,100 shares could have been sold in the over-the-counter market at prices prevailing when offered if sales were made in small quantities and if spread over a six-month period without having the effect of depressing the market by reason of the offering.
The finding of the Probate Court is summed up in the following paragraph from the entry overruling the exceptions to the determination of succession tax:
“3. The block of 8,100 shares of Towmotor stock owned by the decedent could not have been sold in the existing over-the-counter market within a reasonable period of time, to wit, 30 market trading days, without materially depressing the market price of said shares. The most efficient method of marketing said block of 8,100 shares owned by the estate would be through the sale of said shares to a brokerage underwriter at approximately $18 per share with the consequent resale of the stock by the underwriter group on the over-the-counter market.”
Section 5731.02, Revised Code (127 Ohio Laws, 102), in the portions pertinent hereto, read as follows:
“A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution, or corporation, in the following cases:
“ (A) When the succession is by will * * * from a person who was a resident of this state at the time of his death;
“Such tax shall be upon the excess of the actual market *446 value of such property over the exemptions made and at the rates prescribed * #
This court has consistently held that the tax imposed by the above-quoted statute is a tax on the succession of the beneficial interest of each heir, legatee, devisee or other beneficiary of a decedent’s estate. Tax Commission, ex rel. Price, Atty. Genl., v. Lamprecht, Admr., 107 Ohio St., 535; In re Estate of Daniel, 159 Ohio St., 109. It is a tax that is due and payable at the time of the succession. Section 5731.17, Bevised Code. The county auditor is, in the first instance, charged with the responsibility of appraising a succession, i. e., the property succeeded to, at its actual market value as of the date of the accrual of the tax. Section 5731.22, Bevised Code. From this determination by the auditor and such other evidence as may be offered, the Probate Court determines the actual market value of all estates and the amount of taxes to which the successions are liable. Section 5731.32, Bevised Code.
In all the sections of the Succession Tax Chapter of the Bevised Code, where it is pertinent so to do, reference is made by the Legislature to the “actual market value” of the succession. So the question to be determined under these sections, both by the county auditor and by the Probate Court, is the actual market value of the succession as of the date of the accrual of the tax, i. e., the date of death. Neither the auditor, Probate Court nor wé are concerned with the determination of the “fair cash value” of shares, as that term is used in Section 1701.85, Bevised Code, which value is based on the intrinsic value of the shares determined from the assets and liabilities of the the corporation upon consideration of every factor bearing on value. Cf. Roessler v. Security Savings & Loan Co., 147 Ohio St., 480.
Market value traditionally has been defined in Ohio as “the fair and reasonable cash price which could be obtained in the open market, not at forced sale or under peculiar circumstances, but at voluntary sale as between persons who are not under any compulsion or pressure of circumstances and who are free to act; or in other words, as between one who wants to sell and is not compelled to do so and one who wants to purchase and is not obliged to do so.” City of Cincinnati v. Eversman, 4 O. L. R., 140. See, also, Giesy v. Cincinnati, Wilmington & Zones- *447 ville Bd. Co., 4 Ohio St., 308; Riegle v. State, 45 Ohio App., 251, 259; McAdams v. Bolsinger, Admr., 71 Ohio Law Abs., 531.
Market value has thus been defined in terms of the willing seller and the willing buyer. It has never been construed to mean the selling price of property at a forced sale, i. e., a sale which the vendor must make immediately without the time or opportunity to find a buyer who will pay a price representing a sum approaching; the reasonable worth of the property sold. Ohio Turnpike Commission v. Ellis, 164 Ohio St., 377, 384.
It is urged here, on behalf of the estate, that, since the dumping of 8,100 shares of stock on the market at once would depress the market for that stock, the mean selling price as of the date of death may not be used as the basis of its market value, and that, therefore, some discounted valuation must be accepted in determining the succession tax.
Let us look at just one consequence of the acceptance of such a rule. A and B, both residents of the same county, die on the same day. By his will, A bequeaths his 8,100 shares of stock in a particular corporation to X. B, by his will, bequeathes 100 shares of stock in the same corporation to Z. Because'dumping 8,100 shares on the market at one time would depress the market for that stock, X’s succession is taxed on a discounted value of the stock. Because dumping 100 shares on the market would not depress the market, Z’s succession is taxed at the full value of the stock as of the day of death. Thus he who succeeds to a smaller inheritance pays a higher proportion of tax than that paid by one who succeeds to a larger-one. Such a result would obviously fly in the face of the policy in Ohio, adopted pursuant to our Constitution, of a graduated succession tax which on a larger succession is at a higher rate than that on a smaller one. Section 7, Article XII, Constitution of Ohio.
In advocating the adoption of this so-called blockage rule, the executor of an estate might well be advocating a position inimical to his duties as executor. In the light of the option now given a fiduciary, in the case of property not disposed of within one year, between valuing shares of stock as of the date of the death of decedent or one year thereafter, for the purposes of federal estate tax computations (Section 2032, Title 26, U. S. *448 Code), it is most unrealistic to believe that a prudent executor, particularly of an estate as large as the one here involved, would even consider dumping 8,100 shares of stock on the over-the-counter market within 30 days of the death of his decedent.
That such would not be the case here is amply pointed up by the provisions of the will establishing the trusts and by the testimony of the executor to the effect that the shares have not been sold and will not need to be sold. As was said by the court in Florida National Bank, of Jacksonville v. Simpson (Fla.), 59 So. (2d), 751, 768, “if no necessity exists for the sale of this large block of stock, and no reason of any kind whatsoever has been shown by the testimony why it should, be sold now or at any time in the immediate future, it would be a breach of duty on the part of the trustees to sell this block of stock when they know, as the testimony shows, that if they dumped it on the market all at one time, the market would be depressed and they could not get the full market value as it now exists. ’ ’
It appears, therefore, that, at least so far as this case is concerned, the adoption of the thesis that the shares should be valued only at the price for which they could be sold within the 30 days following death is unrealistic and arbitrary. The very fact that the market would be depressed by forcing this large block to sale is a strong indication that such a sale should not be the proper test of the market value of the stock. If the market value would be less depressed by a sale within 60 days, why not adopt 60 days as the period? Or why not adopt 90 days, six months or a year as the proper period?
County auditors and probate judges are called upon daily to determine the market value of property passing by way of succession. Concededly, in many areas the rules within which they must make their determinations are arbitrary. And in many instances they should be. As pointed out by Judge Taft in the opinion in Powhatan Mining Co. v. Peck, Tax Commr., 160 Ohio St., 389, 394, “the result may be what will seem to reasonable and intelligent persons to represent the drawing of artificial and arbitrary boundaries or lines. However, such boundaries or lines should be helpful as a guide to those charged with the administration of the tax laws and to members of the *449 bar, who must advise their clients as to the meaning of those laws.”
In all probability, it would be rare in the administration of an estate composed of large holdings of corporate stock that such holdings would be sold. In most instances, the shares themselves would pass either directly to a beneficiary or indirectly through a trustee. In either event, the recipient of the beneficial interest would succeed to the entire value of the shares and not to any discounted value based upon a fictitious or hypothetical sale. He should be required to pay a tax based on that entire value to which he has succeeded.
There is great temptation to say that because of the particular facts of this case the so-called blockage rule should not be applied in making the determination of this tax. But the majority of the court is disposed to hold that the blockage rule should be generally disavowed, and that the value of shares of stock for succession tax purposes should be determined to be the actual market price of such shares in units in which they are usually sold as of the date of death, without regard to any reduction in such market value by reason of the size of a particular block of shares.
In so holding, we recognize that some federal courts have applied the blockage principle in determining the federal estate or gift tax. In the majority of those cases, however, there was involved statutory language different from that of the Ohio statute in that the courts used the phrase, “fair market value,” rather than “actual market value.” Furthermore, we agree with Marshall, C. J., writing in Tax Commission v. Lamprecht, supra, 537, “that federal policies have no bearing upon this inquiry for the reason that, although the federal legislative power is supreme in all those matters where Congress is given any authority over the states, it yet requires no argument to show that the jurisdiction of the federal government does not extend to the taxing powers of the state in raising revenues for carrying on purely state functions.” Furthermore, we believe that the conclusions at which we have arrived are more consistent with the theory of the succession tax as delineated in the Constitution and statutes of this- state than are the regulations of the federal government.
*450 The judgment of the Court of Appeals is reversed, and the cause is remanded to the Probate Court of Cuyahoga County ' for further proceedings in accordance with this opinion.

Judgment reversed.

Zimmerman, acting C. J., Matthias and 0’Neill, JJ., concur.