715 N.E.2d 922 (1999)
In re the ESTATE OF John Joseph CASHEN, Sr., Deceased,
Lynn L. Chilcote, Personal Representative,
Lynn L. Chilcote, Individually, and Nancy J. Aguilar, Patti M. Clark, Individually, Appellants,
v.
John Joseph Cashen, Jr., Appellee-Plaintiff.
No. 20A03-9901-CV-31.
Court of Appeals of Indiana.
August 30, 1999.
*923 James L. McCaslin, Nancy A. McCaslin, McCaslin & McCaslin, Elkhart, Indiana, Attorneys for Appellants.
William L. Labre, Edwardsburg, Michigan, Attorney for Appellee.

OPINION
BAKER, Judge
Lynn L. Chilcote, personal representative of the estate of her father, John J. Cashen, Sr., along with her sisters, Nancy J. Aguilar and Patti M. Clark (collectively, Chilcote) appeal the trial court's grant of summary judgment regarding the construction of a provision contained in their father's will. Specifically, Chilcote maintains that the trial court erred when it determined that their brother-appellee, John Cashen, Jr., was entitled to purchase their father's farm property at an amount purportedly less than the fair market value.

FACTS
On August 23, 1996, John J. Cashen, Sr., died testate. His will, dated June 19, 1996, was admitted to probate in the trial court pursuant to a petition filed by Chilcote.
At the time of death, Cashen owned a farm consisting of two parcels of land in Elkhart county, which is the subject of this litigation. Cashen provided in his will that if his son, John, actively pursued farming operations for ten years on the property, Chilcote, as trustee of the farm, was directed to offer to sell the farm to John at the "value appraised for the farm" at the time of death. Record at 16-17, 356-57.[1]
Chilcote filed an inventory and listed the appraised value of the farm real estate that Cashen owned on the date of death at a fair market value of $864,000. This "highest and best use" valuation was based on the conversion of the farm from use "as a farm" to use as a residential subdivision. R. at 80-82. Chilcote used this amount as the value in both the Indiana Inheritance Tax Return and in her final account that she submitted to the trial court. R. at 70, 305. Thereafter, John filed an objection and requested additional appraisals without using the "highest and best use value." R. at 54, 79-83. Specifically, John requested an appraisal in accordance with 26 U.S.C. § 2032A[2] of the Internal Revenue Code (hereinafter referred to as § 2032A) to determine the property's value under its existing use as a farm because the "highest and best use" valuation was excessive. R. at 75. The property, when appraised as a farm without consideration for the property being used for its highest and best use, was valued at $421,100. R. at 81-82. The lowest appraised value in accordance with § 2032A totaled $199,049.
In summary, the following appraised values were agreed upon by the parties:

 1. Highest and Best Use (Residential): $864,000.
 2. Sale as a Farm 421,100.
 3. IRC § 2032A 199,049.

Thereafter, on October 2, 1997, John filed a motion for summary judgment to construe the will. Essentially, John urged that he should be able to purchase the land for the lower "farm value" or the § 2032A value rather than for the "highest and best use" fair market value that Chilcote had obtained. R. at 75-76. John indicated that he intended to fulfill the conditions of the will and farm for the requisite ten years as long as he could purchase the farm in accordance with the § 2032A values or the price of "a farm." John also acknowledged, however, that he would not conduct the farming operations if he had to pay the "highest and best use" amount pursuant to the appraisal that Chilcote had obtained.
*924 Following a hearing on the motion, the trial court determined that the lower "farm value" rather than the "highest and best use value" was the appropriate amount at which John could purchase the property. As a result, the trial court found that John was eligible to purchase the farm for $421,110. Chilcote now appeals that determination.[3]

DISCUSSION AND DECISION

I. Standard of Review
In reviewing the grant of summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. Smith v. Allstate Ins. Co., 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. General Motors Corp. v. Northrop Corp., 685 N.E.2d 127, 132 (Ind. Ct.App.1997), trans. denied. Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. City of Elkhart v. Agenda: Open Government, Inc., 683 N.E.2d 622, 625 (Ind. Ct.App.1997), trans. denied. The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. Jordan v. Deery, 609 N.E.2d 1104, 1107 (Ind.1993).
Additionally, we note that when examining a will, the primary purpose is to determine and carry out the intent of the testator. In re Estate of Grimm, 705 N.E.2d 483, 498 (Ind.Ct.App.1999). The interpretation, construction and legal effect of a will is a question to be determined by the court as a matter of law. Hershberger v. Luzader, 654 N.E.2d 841, 842 (Ind.Ct.App.1995), trans. denied. Words contained in a will are to be understood to have been used by the testator in their common and ordinary sense and meaning. Grimm, 705 N.E.2d at 498. If the language in a will is unambiguous and clearly expresses the testator's intent, the express language of the will must govern. Id.

II. Chilcote's Claims
To resolve the issue presented by Chilcote which essentially attacks the trial court's method of valuing Cashen's farm property, we first turn to the relevant provisions of the will:
I further direct that the Trustee shall maintain all farm property which I own at the date of my death for a period not less than ten (10) years under the term and condition that my son, JOHN J. CASHEN, JR., shall have the right to carry on all farming and related activities upon this farmland; and I further direct that during the ten-year period, my Trustee shall receive all income from the farm and pay all expenses in connection with said income and farm expenses, including any mortgage obligation, taxes, insurance and general upkeep for the real estate, improvements, and associated equipment and shall after payment of such expenses, deliver and pay over unto my son JOHN J. CASHEN, JR., all remaining income or profit received after payment of expenses. This provision is granted upon the condition that during the ten-year period, my son, JOHN J. CASHEN, JR., actively pursues farming operations on the real estate. At the end of said ten-year period, I direct my Trustee to offer to sell said farm to my son, JOHN J. CASHEN, JR., at the value appraised for the farm at the time of my death. In the event JOHN J. CASHEN, JR. declines to purchase the real estate at that time or fails to engage in farming activities, the farm real estate together with all improvements thereon shall be offered for sale to the general public and any proceeds received together with the balance of any assets remaining in the *925 trust shall be divided among my children... in equal shares and per stirpes.
R. at 17 (emphasis supplied).
Chilcote directs us to several cases in support of the position that "appraised value" must only mean "highest and best use" value that the appraiser had placed on the farm. Appellant's brief at 17-19. We note, however, that such cases did not involve a construction of the phrase "appraised value" when determining testamentary intent. See, e.g., Lincoln Nat'l Bank v. Shriners Hospitals, 588 N.E.2d 597 (Ind.Ct.App.1992) (breach of trust case where trustee sold parcel of land to one of its own advisory directors for approximately $10,000 less than the value for which they had received a written appraisal); McAdams v. Bolsinger, 71 Ohio Law Abs. 531, 129 N.E.2d 878 (1950) (issue was whether surviving spouse who bid full inventory value for the marital home was entitled to a deed free and clear from the existing mortgage); Estate of Blouin, 490 A.2d 1212 (Maine 1985) (issue under consideration was actual valuation of a business).
Here, the parties all agreed that the appraiser had accurately valued the property "as a farm" when he determined its worth at $421,100. Thus, contrary to the arguments that Chilcote is seemingly advancing, we are not called upon to decide whether the sum of $421,000 represents the actual market value "for a farm." Rather, it must be determined whether the "highest and best use" valuation prevails and whether John must purchase the farm at the price it would command if it were to be converted to a subdivision. Thus, the cases cited by Chilcote are inapposite, inasmuch as they shed no light on the matter of testamentary interpretation.
As the will indicates, Cashen used the phrase "value appraised for the farm." R. at 17. Such a valuation falls within the context of using the land as a farm for the subsequent ten-year period contemplated in the will. The sale to the general public, however, surmises that farming operations on the farm have ceased, whether John terminates the farming operations or declines to purchase the farm. Because this court will consider and give effect to every provision, clause, term and word of the will when determining the testator's intent, see Matter of Estate of Kirkendall, 642 N.E.2d 548, 551 (Ind.Ct.App.1994), it is apparent that the appraised values relate to the use of the land.
To adopt Chilcote's construction and eliminate Cashen's own phrase "for the farm" from the term "appraised value" effectively abrogates any incentive on John's part to continue the farming operations for the ten-year period. Accordingly, Chilcote is essentially requesting John, who always farmed with his father, to continue farming for an additional ten years so that he could purchase the interest in the farm at double the value of the farm, namely at the higher price charged for a subdivision. Such an anomalous result was certainly not representative of Cashen's intent.
Finally, we reject Chilcote's argument that John receives a windfall because he receives "property worth double the value of his sisters' inheritance." Appellant's brief at 12, 20. To the contrary, so long as John continues the farming operation for the ten-year period set forth under the will, all of Cashen's children stand to benefit as a result of Chilcote's use of the § 2032A values with regard to estate and inheritance taxes. Thus, no unfair result arises if John is eligible to purchase the farm at the amount set by the trial court.

CONCLUSION
In light of the circumstances presented here, we conclude that the trial court did not err in determining that Cashen intended to permit John to purchase the farm property at the amount reached by the appraiser if the farm was sold "as a farm." Specifically, the trial court properly concluded that John is eligible to purchase the farm for $421,100, so long as the conditions set forth in the will are satisfied. As a result, the trial court properly granted John's motion for summary judgment.
Judgment affirmed.
SHARPNACK, C.J., and MATTINGLY, J., concur.
NOTES
[1] John had assisted his father in the farming operations up to the time of death.
[2] This section allows for reduced tax consequences on farm property and other specific business property so long as certain conditions are satisfied.
[3] Neither party appeals the trial court's determination that the § 2032A valuation was inappropriate for the farm's purchase.