**Geraldine Marie EAST, Appellant–Respondent,**

v.

**The ESTATE OF Glea Marie EAST, Appellee–Petitioner.**

No. 43A03–0203–CV–96.

Court of Appeals of Indiana.

March 18, 2003.

Michael W. Reed, Reed & Earhart, Attorneys at Law, P.C., Warsaw, IN, Attorney For Appellant.

Vern K. Landis, Stanley E. Pequignot, Rockhill Pinnick LLP, Warsaw, IN, Attorneys For Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Geraldine Marie East, brings this interlocutory appeal from the trial court's Order Construing Will and Codicil Thereto and Instructions as to Real Estate. We restate the issues presented by Geraldine as follows:

(1) whether the Codicil is ambiguous;

(2) whether the trial court erred in excluding extrinsic evidence; and

(3) whether the trial court correctly followed the law in construing the Codicil.

We affirm.

The record reveals that Geraldine's mother, Glea Marie East, died on May 12, 2001 at the age of ninety-three. Glea died testate, leaving a Last Will and Testament dated September 29, 1986, and a Codicil thereto dated August 4, 1993. Glea had three adult children who were the beneficiaries under her Will and Codicil, namely Geraldine, Harold J. East, and Betty J. Lewallen. At the time of her death, Glea owned three tracts of land known as Tract I, Tract II, and Tract III. Tract I consists of approximately 24 acres of land, and Tracts II and III each consist of approximately 40 acres of land. Glea's residence was located upon a portion of Tract III, a large portion of which was also used for farming. All three tracts are rectangular, with their length roughly four times their width. Tract III is adjoined to the east side of Tract II, and Tract I is adjacent to the northeast corner of Tract III. Located in the northwest corner of Tract III are Glea's residence and several other buildings.

The pertinent portions of the Codicil to Glea's Will read as follows:

"I hereby revoke ARTICLE ONE of my Last Will and Testament and substitute the following in its place . . .:

## ARTICLE I

A. I hereby specifically give, devise, and bequeath to my daughter, Geraldine Marie East, all of my diamond rings that I own at the time of my death, my residence house, all appurtenant buildings, and any other buildings including the real estate on which they are situated that I own at the time of my death, located in Harrison Township, County Road 200 South, also known by the address of 4571 West 200 South, Warsaw, Indiana, 46580, and be it known that Geraldine Marie East shall take all of her personal property now on the premises at 4571 West 200 South, Warsaw, Indiana, 46580, that has been commingled with my personal property over the years.

B. I hereby specifically give, devise, and bequeath all of my personal property in my house located at 4571 West 200 South, Warsaw, Indiana, 46580, to my children, namely, Harold East, Jr., Betty Jean Lewallen, and Geraldine Marie East, to be divided equally among them, share and share alike, per capita. If the division can not be agreed upon among my three children aforenamed, then all of my personal property shall remain in the house on the premises as Geraldine Marie East's property.

C. I hereby specifically give, devise, and bequeath all of the remaining real estate, which includes farm land and timber, to my three children, namely, Harold East, Jr., Betty Jean Lewallen, and Geraldine Marie East, to be divided equally among them, share and share alike, per capita.

D. All the remaining real property and personal property not disposed of previously in this will, shall be divided equally among my three children, share and share alike, per capita." Appendix at 12–13.

After Glea's death, on October 26, 2001, Harold and Betty filed a petition for probate of a self-proved will, issuance of letters testamentary, and for unsupervised administration. Eventually, on November 9, 2001, the trial court entered an order converting the estate to supervised administration and appointed the Lake City Bank of Warsaw as the personal representative of the estate. On October 31, 2001, Harold and Betty had filed a "Petition for Construction of the Will and Codicil and for Instructions as to Real Estate." Following a hearing on this petition on December 20, 2001, the trial court entered an "Order Construing Will and Codicil Thereto and Instructions as to Real Estate" on January 22, 2002.

The trial court construed the Codicil to devise to Geraldine all of the buildings, including the residence, all of which are located on Tract III. Instead of construing the Codicil in such a manner as to devise to Geraldine all of Tract III, as Geraldine had requested, the trial court ordered that Geraldine was to receive the northwest corner of Tract III. This northwest corner of Tract III included all of the land on which the buildings were situated. The northern and western boundaries of Geraldine's portion of Tract III were those of Tract III; the southern boundary was to be a line running east and west twenty feet south of the southernmost building; the eastern boundary was to be a line running north and south twenty feet east of the easternmost building.

Geraldine claims that her mother's Will and Codicil are ambiguous, that

the trial court therefore erred in excluding extrinsic evidence of the intent of the testatrix, and that the trial court should have construed the Codicil to devise to her all of Tract III.

 When examining a will, the primary purpose is to determine and carry out the intent of the testator. *In re Estate of Cashen,* 715 N.E.2d 922, 924 (Ind.Ct. App.1999). The interpretation, construction, and legal effect of a will are questions to be determined by the court as a matter of law. *Id.* Words contained in a will are to be understood to have been used by the testator in their common and ordinary sense and meaning. *Id.* If the language in a will is unambiguous and clearly expresses the testator's intent, the express language of the will must govern. *Id.* The plain and unambiguous purpose and intention of the testator must be determined only from the terms of the instrument itself considering the same without reference to the whole instrument and without taking individual clauses out of context. *Hauck v. Second Nat'l Bank of Richmond,* 153 Ind.App. 245, 260, 286 N.E.2d 852, 861 (1972) (construing a trust instrument). The "four-corners" rule has long been the law in Indiana and requires that, as to any matter expressly covered by a written instrument, the provisions therein, if unambiguous, determine the terms of the instrument. *Id.*

 If an ambiguity does exist, extrinsic evidence is admissible to explain the writing or make plain the meaning or intention of the parties, but such evidence is not admissible to vary or contradict the writing.[1] 153 Ind.App. at 261, 286 N.E.2d at 862. If an instrument is worded so that it can be definitely interpreted and its terms carried out within the instrument by applying that language to the subject matter thereof without contradiction, then the instrument cannot be termed uncertain or ambiguous, and extrinsic evidence is not admissible to vary or contradict its meaning. 153 Ind.App. at 262, 286 N.E.2d at 862. The lack of clarity upon a casual reading of an instrument is not sufficient grounds to determine whether the instrument is ambiguous. 153 Ind.App. at 263, 286 N.E.2d at 862. Nor is an instrument ambiguous merely because it may be difficult to construe. *Id.* Neither is an instrument rendered ambiguous by the mere fact that there is a disagreement as to its proper construction. 153 Ind.App. at 264, 286 N.E.2d at 863. Extrinsic evidence should not be admitted if an apparent ambiguity can be reconciled from a reasonable interpretation of the instrument. 153 Ind.App. at 263, 286 N.E.2d at 863. No ambiguity can be said to exist until an application of the rules of interpretation leaves the instrument uncertain as to which of two or more possible meanings represents the true intention of the testator. 153 Ind.App. at 263, 286 N.E.2d at 862.

In the present case, the language at issue states, "I hereby specifically give, devise, and bequeath to my daughter, Ger-

---

1. As explained by the court in *Hauck:*

"Generally, ambiguities are of two types, patent and latent. A patent ambiguity is apparent on the face of the instrument and arises by reason of an inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning. Extrinsic evidence is not admissible to explain or remove a patent ambiguity.

A latent ambiguity arises not upon the face of the instrument by virtue of the words used, but emerges in attempting to apply those words in the manner directed in the instrument. Extrinsic evidence is admissible to explain or clear up a latent ambiguity." 153 Ind.App. at 261–62, 286 N.E.2d at 862.

aldine Marie East, ... my residence house, all appurtenant buildings, and any other buildings *including the real estate on which they are situated....*" App. at 12 (emphasis supplied). Geraldine contends that there are three reasonable interpretations of this language: (1) she receives the buildings and only the land upon which they are immediately situated (a position advocated by neither party in the present case); (2) she receives all of Tract III; or (3) she receives the buildings and the land upon which they are immediately situated in addition to whatever land is necessary for their use and enjoyment (the position adopted by the trial court). If there are three reasonable interpretations, Geraldine's argument continues, then the Codicil is ambiguous, and the trial court therefore improperly excluded extrinsic evidence which might have clarified this ambiguity.

Reviewing the relevant case law, the Codicil does leave us with some uncertainty as to the extent of the devise to Geraldine. Citing *Lewis v. Atkins,* 122 Ind.App. 618, 105 N.E.2d 183 (1952), Geraldine claims that the Codicil devised to her all of Tract III. In *Lewis,* the will at issue devised the testatrix's "home and residence located at 1006 N. Meridian Street in Indianapolis, Marion County, Indiana...." 122 Ind.App. at 620, 105 N.E.2d at 184. The lot containing the home also contained a garage, and it was suggested that the devise did not include the real estate upon which the garage was located. In response to this the court wrote, "We do not believe, however, that such a construction of the will is tenable.

According to the great weight of authority the devise of a 'home' includes not only the testator's dwelling house but the entire parcel of real estate constituting the residential estate." 122 Ind.App. at 622, 105 N.E.2d at 185. Geraldine claims that the parcel constituting the residential estate is all of Tract III.

In *City of Richmond v. State ex rel. Mendenhall,* 5 Ind. 334, 335, 1854 WL 3212 (1854), cited by the *Lewis* court in support of its holding, the testator's will provided that his "brick house" should be rented and the proceeds were to go to his sister during her lifetime and afterwards to be apportioned for the education of the children of the town. The house referred to was located on a lot 132 feet long and 82 1/2 feet wide. The house itself was located on the southwest corner of the lot and was 73 1/2 feet long and 20 feet wide. The two doors and cellar of the house could not be accessed directly from any street or alley but could only be reached by going onto the lot. The question was presented whether the use of the word "house" included the whole lot, or only the ground upon which the house was erected. The Court wrote, Lord Coke says, that "by the grant of a messuage or house, the orchard, garden and curtilages do pass, without the word 'appurtenances,' and an acre or more may pass by the name of house." *Id.* at 337 (citations omitted). The Court noted that the testator had manifested his intention to dispose of all of his property, and, as no disposition of the remainder of the lot was made, held "the inference is that he intended that the whole lot should pass by the word 'house.'"[2] *Id.*

---

**2.** We note that in *Mendenhall,* the will devised a "house," whereas the will in *Lewis* devised a "home and residence." It has been observed that the devise of a "home" may have a broader significance than the devise of a "house." 80 Am.Jur.2d *Wills* § 1101–02 (2002). Here, the Codicil devised a "resi-

dence house" and other buildings. Neither the *Lewis* nor *Mendenhall* courts drew any distinction between "house" and "home," and the *Lewis* court cited the *Mendenhall* decision for support of its holding without making such a distinction. *See Lewis,* 122 Ind.App. at 622, 105 N.E.2d at 185. In the

Here, the trial court distinguished the *Lewis* case, writing in its order:

"The rule [from *Lewis*] is usually applied to lots in towns or cities or small tracts, not to a 40 acre tract of land. The purpose of the rule is to insure that the devisee has such land that is reasonably necessary for the use and enjoyment of the house, for example, but not limited to, egress and ingress." Appendix at 26.

■■■ Although it is true that both the *Lewis* and *Mendenhall* cases dealt with relatively small lots in cities, neither of these cases explicitly limits the application of the rule to city lots. Be that as it may, we agree with the trial court that the purpose underlying the rule is to give to the devisee enough land for the use and enjoyment of the devised residence. *See Mund v. Friedman,* 89 Ill.App.2d 338, 232 N.E.2d 757 (1967) (gifts of buildings in testator's will carried not only the land on which the buildings stood, but also such additional ground in connection therewith as was necessary for their complete use and enjoyment); *Schoendienst v. Fink,* 58 Ill.App.2d 203, 207 N.E.2d 325 (1965) (devise of "house" carries with it all the land necessary to the full use and enjoyment thereof); *Cuppett v. Neilly,* 143 W.Va. 845, 105 S.E.2d 548 (1958) (construing devise of "home" to include not only the dwelling house but the entire residential estate and all appurtenances customarily enjoyed by the owner during his lifetime which tend to make a home a convenient and agreeable place of abode), *overruled on other grounds by Watson v. Santalucia,* 189 W.Va. 32, 427 S.E.2d 466 (1993); *Gilbert v. McCreary,* 87 W.Va. 56, 104 S.E. 273 (1920) ("a devise of a house carries all the land necessary to full use and enjoyment thereof"). *See generally* A.E. Korpela, Annotation, *What Passes Under, and Is Included In, Devise of "Building," "House," or "Dwelling House,"* 29 A.L.R.3d 574, 1970 WL 22215 (1970); R.P. Davis, Annotation, *What Passes Under, and Is Included In, Devise of "Home" or "Home Place,"* 38 A.L.R.2d 840, 1954 WL 9255 (1954).

What is necessary for the use and enjoyment of a residence located on a city lot is not necessarily the same as what is necessary for the use and enjoyment of a house and the surrounding outbuildings located on a 40 acre tract used for farming. Indeed, when the devise is of a residence located upon a city lot, the entire lot would generally be necessary for the use and enjoyment of the residence. This was the result in both *Mendenhall* and *Lewis*. However, when dealing with a residence located upon a 40 acre tract, a much smaller parcel might be appropriate and sufficient for the use and enjoyment thereof. Indeed, the *Lewis* court wrote that the devise of a home includes the entire parcel constituting the "residential estate." 122 Ind.App. at 622, 105 N.E.2d at 185. The "residential estate" might well be less than all of Tract III.

■■■ The relevant question before us is how much land is necessary for the use and enjoyment of the buildings devised to Geraldine. Thus, even after application of the rules of interpretation, there remains a question as to the true intention of the testator, and we must conclude that the Codicil is ambiguous. *See Hauck,* 153 Ind. App. at 263, 286 N.E.2d at 862. *See also* 29 A.L.R.3d at 577 (noting that wills devising a building, house, or dwelling house, have generally been considered latently ambiguous with respect to the description of the land intended to pass and that extrinsic evidence is competent to identify the property so devised). The extrinsic evidence used to clarify such ambiguities

present case, the parties do not argue that such distinction is relevant, and as such is

unnecessary for the resolution of the case at bar, neither do we.

generally relates to the amount of land used by the testator in conjunction with the use of the residence. *See id.* at 578; 38 A.L.R.2d at 842. As the Codicil is ambiguous, extrinsic evidence should have been admissible to explain or clarify the ambiguity. *See Hauck,* 153 Ind.App. at 262, 286 N.E.2d at 862.

Although we agree with Geraldine that the trial court was incorrect inasmuch as it held that the Codicil was not ambiguous, this is not necessarily fatal to the result reached by the trial court. The only extrinsic evidence which Geraldine sought to admit was the testimony of Rozella Helvey, an acquaintance of Glea East.[3] Although Geraldine now claims that the trial court erred in excluding this testimony in that it was properly admissible extrinsic evidence, the record does not indicate that the trial court excluded the testimony on the ground that it was extrinsic evidence. Instead, the trial court sustained objections that the testimony was inadmissible hearsay. Therefore, Geraldine also argues that Ms. Helvey's testimony was not inadmissible hearsay.

Hearsay is defined by Indiana Evidence Rule 801(c) as a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. Hearsay is generally inadmissible. Ind. Evidence Rule 802. Geraldine claims that Ms. Helvey's testimony would have been admissible hearsay pursuant to Indiana Evidence Rule 803(3), which provides in relevant part:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness.

* * *

(3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it related to the execution, revocation, identification, or terms of declarant's will."

As noted by the Estate, Geraldine made no offer of proof regarding Ms. Helvey's testimony. Evidence Rule 103(a) provides:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

* * *

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked."

Geraldine acknowledges that she made no offer of proof when the trial court excluded the testimony, but claims that the substance of the evidence was apparent from the context within which the questions were asked. Specifically, Geraldine claims that "the proposed testimony of Rozella Helvey ... was going to address Glea's intentions in making her devise of real estate to Geraldine. The witness would not have been called if this evidence was

---

**3.** In her briefs, Geraldine appears to argue that other extrinsic evidence was excluded. *See* Appellant's Reply Br. at 5 (referring to the extrinsic evidence excluded by the trial court as "including the proposed testimony of Rozella Helvey"). However, the only evidence to which Geraldine specifically refers, and the only evidence indicated by the record, is Ms. Helvey's testimony. Therefore, our discussion of the extrinsic evidence refers only to this testimony.

not going to support Geraldine's interpretation of Glea's Codicil." Appellant's Reply Br. at 5.

▇▇▇ We cannot dispense with the general requirement of an offer of proof simply because the witness whose testimony is at issue has been called by the party seeking admission of the evidence. Certainly, a party calling a witness to testify usually does so in an effort to elicit testimony in support of that party's position. To not require an offer of proof in such situations would eviscerate the Rule's general requirement that the party seeking the admission of evidence make a proper offer to establish the substance of the evidence to the trial and appellate court.

In the case before us, without an offer of proof, we are unable to determine what the substance of Ms. Helvey's response would have been and cannot say that her testimony would have necessarily fit within the hearsay exception contained in Evidence Rule 803(3). As a result, we also cannot say that the trial court abused its discretion in sustaining the objection and excluding Ms. Helvey's testimony. Whether or not the trial court should have admitted extrinsic evidence, excluding this testimony as hearsay did not constitute reversible error. Given this conclusion, any remand to the trial court to consider extrinsic evidence would be fruitless, as Geraldine may not now have a second chance to present extrinsic evidence after failing to preserve the sole evidentiary issue she presents upon appeal.

This leaves us in a somewhat awkward position. If we remand to the trial court for further proceedings, there would be no new evidence for the trial court to consider. At the same time, we are faced with a question which usually requires resort to extrinsic evidence to solve, i.e., exactly how much land is necessary for the reasonable use and enjoyment of the house and buildings devised to Geraldine.

Be that as it may, Geraldine makes no argument that the amount of land devised to her pursuant to the trial court's construction of the Codicil is in fact insufficient for the use and enjoyment of the house and other buildings. In other words, she does not claim that all forty acres of Tract III are necessary for the use and enjoyment of the buildings. Indeed, Geraldine admits that the trial court's construction is a reasonable one, and, in light of our discussion of the relevant rules of construction, neither can we say that the trial court's conclusion is incorrect as a matter of law.

Therefore, as Geraldine's claim of evidentiary error was not properly preserved for appellate purposes, and the parties agree that the trial court's construction of the Codicil was reasonable, we are unable to conclude that the trial court committed reversible error.

The judgment of the trial court is affirmed.

SHARPNACK and KIRSCH, JJ., concur.