In the Matter of the Marian BOELSON TRUST U/A Dated 4/25/1996, as Amended.

University of Southern Indiana Foundation, Appellant,

v.

Richard A. Baker and Integra Bank N.A. Trust and Investment Management Group, Appellees.

No. 82A04–0411–CV–592.

Court of Appeals of Indiana.

June 30, 2005.

Alan N. Shovers, Elizabeth A. Browning, Kahn, Dees, Donovan & Kahn, LLP, Evansville, for Appellant.

John Burley Scales, Frank R. Hahn, Law Office of John Burley Scales, Boonville, for Appellees.

## OPINION

MATHIAS, Judge.

The revocable inter vivos trust of Marian Boelson ("Boelson") was interpreted in the probate division of Vanderburgh Superior Court. The University of Southern Indiana Foundation ("USIF") appeals, raising the following restated issues for review:

I. Whether the probate court properly excluded parol evidence; and,

II. Whether Boelson's trust's use of the term "personal property" should be construed as meaning "personal effects."

Concluding the probate court did not err when it excluded parol evidence and "personal property" means "personal property," we affirm.

### Facts and Procedural History

On April 25, 1996, Boelson executed a revocable inter vivos trust. The portions of this trust relevant to the case at bar state:

6. Upon the death of Marion Boelson (and upon the direction of her Personal Representative if any) the TRUSTEE shall pay any and all expenses connected with or arising on account of her death including any funeral bills, costs of last illness, inheritance, estate or succession taxes, court costs, attorney's or executor's fees, legally owing debts of Marian Boelson and any other costs of a like or similar nature, all of said payments to be made out of income first and then principal of this trust.

7. The TRUSTOR is not unmindful that she has a brother and sister living at the time she executes this Trust and that her brother has adopted children. Furthermore she is aware that there are relatives of her deceased husband, Emory Boelson. However, she elects not to provide for any of said heirs or heirs of her deceased husband.

8. After payment of the sums described in paragraph 6, the TRUSTEE next shall distribute to Faye Rucks presently of 850 Cherokee Road, Henderson, Kentucky 42420, the sum of Fifty Thousand Dollars ($50,000). If Fay Rucks is deceased, then said distribution shall be made to her children surviving the TRUSTOR, equally, share and share alike, or to the survivor of them.

9. Next, and after the payment provided for in the proceeding paragraphs 6 and 8, all of the rest, residue and remainder of the Trust, whether income or

principal, shall be distributed to the University of Southern Indiana Foundation to be used for Presidential Scholarships, or any lawful successor to the University of Southern Indiana or to any substitute or successor fund for the Presidential Scholarship Fund.

Appellant's App. pp. 26–28.

In August of 2001, Boelson hired Shannon Frank ("Frank") to amend her trust. Boelson allegedly presented Frank with a "hand-typed" note reflecting her desired changes. Appellant's App. p. 118. This note states in part, "[b]rother is beneficiary of and to receive two IRA accounts, automobile and any furnishings and personal property in the condo that he would like." *Id.* Boelson also requested her trust to be amended so her friend, Faye Rucks ("Rucks"), would receive $10,000 instead of $50,000.

On August 16, 2001, Boelson's trust was amended. The portions of this amendment relevant to the case at bar state:

Section 6 of said Trust Agreement shall be revoked in its entirety and the following provision inserted in its place, as if said provision had originally been included in said Trust Agreement:

"Upon the death of Marian Boelson (and upon the direction of her Personal Representative, if any) the Trustee shall pay any and all expenses connected with or arising on account of her death, including any funeral bills (in excess of the funds designated by Marian Boelson as part of her funeral and burial arrangements established with Boone Funeral Home, Evansville, Indiana), costs of last illness, inheritance, estate or succession taxes, court costs, attorneys or executor's fees, legally owing debts of Marian Boelson and any other costs of a like or similar nature, all of said payments to be made out of income first and then principal of this Trust."

Section 7 of said Trust Agreement shall be revoked in its entirety and the following provision inserted in its place, as if said provision had originally been included in said Trust Agreement:

"Upon the death of Trustor, the Trustor's brother, Richard A. Baker, if living, shall receive any and all proceeds and assets that were held in Trustor's individual retirement accounts, if any, as well as, all of Trustor's automobiles, furnishings *and other personal property.*"

Section 8 of said Trust Agreement shall be revoked in its entirety and the following provision inserted in its place, as if said provision had originally been included in said Trust Agreement:

"After the payment of the sums described in Section 6 of this Trust Agreement, the Trustee shall distribute to Trustor's friend, Faye Rucks, presently residing at 850 Cherokee Road, Henderson, Kentucky, the sum of Ten Thousand Dollars ($10,000), if living, and if not living, then said funds shall become part of the residue of the Trust and be distributed according to the terms and conditions set forth in Section 9 of this Trust Agreement."

The remaining sections, terms and conditions of the Trust Agreement have not been amended and are hereby ratified, reconfirmed and republished.

Appellant's App. pp. 35–36 (emphasis added).

Boelson died on August 29, 2003. On March 1, 2004, Integra Bank N.A. Trust and Investment Management Group, as trustee, filed a petition to docket trust and a petition for interpretation. On March 12, 2004, Richard Baker ("Baker") filed his response, which alleged that he is the ben-

eficiary of Boelson's trust's personal property.

USIF responded to Baker's petition on March 26, 2004. USIF's petition alleged that Boelson's trust limits Baker's recovery to the items specifically bequeathed to him. Appellant's App. p. 48. USIF also claimed that the remainder of Boelson's personal and real property is residue of the trust, which must be given to USIF.

On July 27, 2004, USIF moved for summary judgment and designated evidence. USIF submitted the affidavit of Frank, which alleged that "Boelson requested that [Frank] draft the Amendment in such a way that her brother, [Baker], would receive of all [sic] her individual retirement accounts, if any, along with her automobiles, her furnishings and her other personal effects." Appellant's App. p. 60. Frank's affidavit also stated, "I did not use the term 'personal property' in its technical sense" while amending Boelson's trust. Appellant's App. p. 61.

USIF also submitted the affidavit of Janet Esser ("Esser"), who was Boelson's trustee. Appellant's App. p. 62. Esser's affidavit stated that Boelson indicated to her that she hoped to live long enough for her gift to USIF to grow to be worth a million dollars. *Id.* A separate USIF affidavit from Allen Boyken indicated Boelson told him shortly before her death that USIF would receive almost all of her property after her death and she specifically included her stocks within this property. Appellant's App. p. 80.

On September 14, 2004, USIF filed a supplemental affidavit from Frank. Frank's affidavit alleged that Boelson brought him the above-cited "hand-typed note" reflecting the changes she wished to be made to her trust. Appellant's App. p. 118.

Baker objected to USIF's designated evidence, contending that Boelson's trust is unambiguous and, as such, the consideration of parol evidence is improper. Appellant's App. pp. 107, 125. Baker also noted that Boelson's trust contained real property in the amount of $118,000. Appellant's App. p. 98.

After conducting an October 14, 2004 hearing, the probate court denied USIF's Motion for Summary Judgment and entered an order interpreting Boelson's trust. After noting that the parol evidence made it clear that Boelson intended most of her personal property go to USIF, the probate court concluded that the language of Boelson's trust was unambiguous and it could not consider parol evidence. Appellant's App. pp. 14–17. The probate court then ordered Boelson's personal property to be given to Baker and the residue from the trust's real property to be given to USIF. USIF now appeals.

## I. Standard of Review

 The interpretation of a trust is a question of law for the court. *See Retseck v. Fowler State Bank,* 782 N.E.2d 1022, 1025 (Ind.Ct.App.2003). Consequently, we give no deference to the probate court's decision and review the question de novo. *Id.*

## II. The Evidence Rule

 When examining a [trust], the primary purpose is to determine and carry out the intent of the testator. . . . Words contained in a [trust] are to be understood to have been used by the testator in their common and ordinary sense and meaning. If the language in a [trust] is unambiguous and clearly expresses the testator's intent, the express language of the [trust] must govern. The plain and unambiguous purpose and intention of the testator must be determined only from the terms of the instru-

ment itself considering the same without reference to the whole instrument and without taking individual clauses out of context. The "four-corners" rule has long been the law in Indiana and requires that, as to any matter expressly covered by a written instrument, the provisions therein, if unambiguous, determine the terms of the instrument.

*East v. Estate of East*, 785 N.E.2d 597, 601 (Ind.Ct.App.2003) (citations omitted).

■■■■ A document is ambiguous only when reasonable persons find it subject to more than one interpretation. *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind.Ct.App.2004). If an instrument is worded so that it can be definitely interpreted and its terms carried out by applying that language to the subject matter thereof without contradiction, then the instrument is unambiguous, and extrinsic evidence is inadmissible. *East*, 785 N.E.2d at 601. Extrinsic evidence may not be admitted if an apparent ambiguity can be reconciled from a reasonable interpretation of the instrument. *Id.*

■■■■ Extrinsic evidence of a testator's intent is inadmissible if a trust contains "patent ambiguity." *Oxford Fin. Group, Ltd. v. Evans*, 795 N.E.2d 1135, 1143 (Ind.Ct.App.2003). Patent ambiguity is apparent on the face of the instrument and arises by reason of an inconsistency or inherent uncertainty of language used so that the effect is either to convey no definite meaning or a confused meaning. *Adams*, 808 N.E.2d at 196. Extrinsic evidence of a testator's intent may only be considered when the trust contains "latent ambiguity." *Id.* Latent ambiguity arises not by virtue of the words used; it emerg-

es in attempting to apply those words in the manner directed. *Id.*

### A. Application of the Parol Evidence Rule

■■■ USIF claims the probate court erred in failing to consider parol evidence because the trust is ambiguous. USIF first contends the provisions of Boelson's trust clearly intended a residuary benefit to USIF and this intent conflicts with the trust's language naming Baker as the beneficiary of Boelson's personal property. Br. of Appellant at 16. USIF's contention does not establish ambiguity, much less latent ambiguity. "Personal property" is not the only type of property that might be contained in a trust. As such, Boelson's trust's indication that USIF shall receive trust residue and Baker shall receive Boelson's personal property is not contradictory.[1]

■■■ USIF next contends Boelson's trust is ambiguous because Section Nine, which provides that the residue of Boelson's trust shall be distributed to USIF, makes no mention of payments to Baker. Br. of Appellant at 16. However, this argument is insufficient to establish ambiguity as this section directs USIF to receive the residue of Boelson's trust after Boelson's personal property is distributed.

■■■ USIF next contends Boelson's trust is ambiguous because "if all of the personal property was granted to Baker in Section 7 as Baker argues, there would be nothing left to fund the $10,000 bequest to Rucks and nothing left to fund the Presidential Scholarships contained in the residuary clause." Br. of Appellant at 17. However, the section of the trust that vests Baker with Boelson's personal prop-

---

1. Though unnecessary to our determination, USIF received real property residue in the amount of $118,000.

erty states "other personal property." Appellant's App. p. 36. As such, we agree with the probate court's conclusion that "other personal property" implies Baker shall receive Boelson's personal property "other" than the $10,000 distributed to Rucks. Appellant's App. p. 6. Moreover, because there are types of distributed property other than personal property, vesting Baker with Boelson's personal property does not leave USIF with nothing.

■■■■ USIF next contends that, at the time of Boelson's amendment to her trust, the trust contained no real property; accordingly, Boelson could not have intended USIF to be the recipient of her real property and Baker to be the recipient of her personal property. Br. of Appellant at 17. However, USIF's argument is based upon parol evidence, not ambiguity contained in the four corners of Boelson's trust. A party may not use parol evidence to argue the propriety of admitting parol evidence.

■■■■ USIF finally asserts the trust's inclusion of the general term of "personal property" is needlessly redundant when included with the specific terms of her retirement accounts, automobiles, and furnishings; accordingly, "other personal property" can only mean Boelson's "property in her condominium." Br. of Appellant at 18. There are two problems with USIF's assertion. First, redundancy does not equal ambiguity, and even if it did, such ambiguity would be patent rather than latent. Second, USIF's assertion that "other personal property" should be construed to mean "property in Boelson's condominium" would render the trust's term "furnishings" equally redundant.

Even USIF's argument that *"[d]espite the wording of Section 7,* Boelson must have intended for Baker to receive something less than all personal property,"

would seem to concede that Boelson's trust's chosen term of "other personal property" means "other personal property" and is unambiguous. Br. of Appellant at 17. Accordingly, the probate court did not err when it excluded parol evidence.

B. *The Viability of the Parol Evidence Rule*

■■■■ USIF also asserts this court should abandon the distinction between patent and latent ambiguity and interpret Boelson's trust on the basis of her "obvious" intent as established by parol evidence. There are several problems with USIF's contention.

■■■■ First, because "personal property" has such a distinct and well-settled meaning, we agree with the trial court's conclusion that Boelson's trust is unambiguous. Accordingly, our holding does not rely upon the distinction between patent and latent ambiguity, and a rejection of this distinction would not affect the outcome of the case at bar. Second, "[t]he parol and extrinsic evidence rules are designed to give certainty to a transaction which has been reduced to writing by protecting the parties against the doubtful veracity of interested witnesses and the uncertain memory of disinterested witnesses." *Hauck v. Second Nat'l Bank of Richmond,* 153 Ind.App. 245, 261, 286 N.E.2d 852, 861 (Ind.Ct.App.1972).

The need for this protection is aptly illustrated by USIF's argument that, "Boelson's own hand-typed list of changes she requested her attorney make to her Trust is hardly the type of evidence the rule is designed to protect Marian Boelson from." Br. of Appellant at 19. A "hand-typed list" is *exactly* the type of evidence the parol evidence rule is designed to protect testators from. Though it is tempting to use Frank's representations to explore

Boelson's intent, doing so would circumvent the parol evidence rule and would effectively declare open season on all Indiana wills. Furthermore, the purpose of a properly documented will is to keep the proceeds of the deceased's estate from being exhausted in litigation where self-interested parties use evidence to characterize the deceased's intent.

Lastly, we reject USIF's argument because the distinction between patent and latent ambiguity is a long-standing Indiana rule. The rejection of such long-standing precedent is more properly in the province of our supreme court.[2]

## II. Personal Property

USIF also asserts that the rule of *ejusdem generis* allows Boelson's trust's use of "personal property" to be construed as "personal effects." Br. of Appellant at 27. The rule of *ejusdem generis* provides, "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." *J.A.W. v. Marion County Dep't of Public Welfare*, 687 N.E.2d 1202, 1210 n. 21 (Ind.1997).

USIF asserts "other personal property" is preceded by "automobiles" and "furnishings" and, therefore, "other personal property" should be construed as limited to property similar to automobiles and furnishings. Br. of Appellant at 27. If "automobiles and furnishings" were the only terms that preceded "other personal property," perhaps USIF's argument would have merit. However, Boelson's retirement accounts also precede "other personal property." Appellant's App. pp. 35–36. USIF fails to assert that the remainder of Boelson's personal property is not of the same kind or class as Boelson's retirement accounts and such a position is far from apparent. Simply said, "personal property" means "personal property," and the probate court did not err when it interpreted Boelson's trust.

### Conclusion

The probate court did not abuse its discretion when it refused to consider parol evidence, and it did not err when it interpreted Boelson's trust.

Affirmed.

SULLIVAN, J., and BAILEY, J., concur.

---

2. USIF also asserts that, even if there is no ambiguity in Boelson's trust, this court should abandon the parol evidence rule if parol evidence establishes the drafter's intent by a "clear and convincing" quantum of proof.

Br. of Appellant at 22–25. We reject this argument for the same reasons we decline to abandon the distinction between patent and latent ambiguity.